GROCERS SUPPLY COMPANY *vs.* ARMAND DUPUIS.

SAME *vs.* I. RENAUD COMPANY.

SAME *vs.* JAMES VADEBONCOEUR & others.

Bristol.    October 26, 1914. — December 31, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Unfair Competition.    Trade Name.*

One, who holds by purchase the alleged exclusive right to manufacture and sell in this Commonwealth a certain bleaching and cleansing fluid under the name "Kormon Water" (in the French language "Eau de Kormon") and to use in

---

connection with its sale a red label bearing the picture of a shield, which is registered in the office of the secretary of the Commonwealth as a trade mark applicable to this fluid, and who has established and carried on for many years in a manufacturing city and its vicinity a valuable business intimately associated with this trade name and label, may maintain a suit in equity to enjoin a defendant, who has been guilty of such acts, from using a name and label so closely resembling the plaintiff's that ordinary purchasers, giving such attention as they usually do in buying this class of goods, are likely to mistake the defendant's goods for those of the plaintiff, irrespective of the question whether the registration of the trade name and label conferred on the plaintiff any greater rights than those to which he was entitled at common law.

In the present case the defendants were enjoined from manufacturing or selling cleansing or bleaching fluid under the name "Kormon Water," "Cormond Water," "Cormon Water," "Eau de Kormon," "Eau de Cormond," or "Eau de Cormon," and from putting up for sale or selling such fluid in bottles or other receptacles bearing a label so closely resembling that used and registered by the plaintiff and his predecessors in title as to be mistaken for it by the ordinary purchaser, and the case was sent to a master to find and report what profits and damages, if any, the plaintiff was entitled to recover.

DE COURCY, J.    The plaintiff is engaged in the business of manufacturing and selling a certain bleaching and cleansing fluid, named by it and its predecessors in title "Kormon Water," (in the French language "Eau de Kormon.")   The recipe for making this fluid was brought to Fall River in the Spring of 1897 by Francis Cormond of Montreal, Canada. In partnership with one Maynard he made and sold it in Fall River and vicinity under the name of "Cormond Water."   In August, 1897, one Adam succeeded Cormond in the partnership and received from him a writing purporting to transfer all his title and interest in the recipe in the State of Massachusetts, with the exclusive power to manufacture and sell the Cormond Water in this State, but not elsewhere.   On the same date Cormond made a similar agreement with other parties for Rhode Island.   Maynard and Adam continued to manufacture and sell the fluid and in 1899 registered in the office of the Secretary of the Commonwealth a trade mark applicable thereto, the essential features of which are the words "Kormon Water" (in the French language "Eau de Kormon"), together with the picture of a shield, which is like that appearing on the red label hereinafter referred to.   The business of Maynard and Adam, including the formula or recipe for making said fluid, and their rights in the alleged trade names and trade marks so far as they could be transferred, is now owned by the plaintiff, and has been carried on continuously in Fall River.

As already indicated the plaintiff did not acquire the exclusive right to manufacture and sell washing fluid made according to the Cormond recipe. It further appears that for some years cleansing and bleaching fluid has been sold in New England under the name of Cormond, Cormon and Eau de Cormond (but not Kormon) by many different dealers independently of any of the parties in these cases. For that, if for no other reason, the plaintiff has no technical trade mark, as that in its very nature is an exclusive right, indicating the source of the goods to which it is attached. *George G. Fox Co.* v. *Glynn,* 191 Mass. 344, 352. *G. W. Cole Co.* v. *American Cement & Oil Co.* 130 Fed. Rep. 703.

The trial judge has found that since the early part of 1898 the only label used by the plaintiff and its predecessors is one that is red in color and distinctive in design, like the copy attached to the report; and also that the name "Kormon Water" (and "Eau de Kormon"), in connection with the red label, has become and is identified by the trade and by the public with the cleansing and bleaching water manufactured and sold by the plaintiff and its predecessors in the same business. He also specifically found that the plaintiff has a valid trade name in the words "Kormon Water;" and in the absence of the evidence we must accept this finding as true. Unlike the case of a trade mark, it is not essential that the plaintiff have a right to the trade name to the exclusion of others everywhere, in order to prevent the defendants from using it in the market which the plaintiff has created. *Cohen* v. *Nagle,* 190 Mass. 4. *Sartor* v. *Schaden,* 125 Iowa, 696. 18 Ann. Cas. 459, note. And although others, who are not parties in these cases, may have some rights in the use in other localities of the names "Cormond," "Cormon," "Kormon" (and "Eau de Cormond"), which on the findings are *idem sonans,* these defendants have shown no right to use any of them. So far as appears the name Cormond, in a secondary meaning, has not become public property. On the record the defendants are mere infringers, and it does not concern them what the legal rights of the plaintiff are as against Francis Cormond and persons claiming under him. *Viano* v. *Baccigalupo,* 183 Mass. 160. See *R. J. Reynolds Tobacco Co.* v. *Allen Bros. Tobacco Co.* 151 Fed. Rep. 819.

In addition to the trade name, the plaintiff and its predecessors for many years have used also the red label already referred to,

which is readily distinguished by its color, design and other elements combined. By means of the quality of its washing fluid, and its enterprise in advertising it, the plaintiff apparently has won from the people of Fall River and vicinity a favorable reputation for its goods, and has acquired an increasing patronage of habitual customers. The valuable good will of its business is intimately associated with its trade name and label. On the broad ground of unfair competition the defendants have no right to manufacture and sell washing fluid in packages similar in appearance to those used by the plaintiff, and with like trade names, and labels simulating those of the plaintiff in color, design and reading matter. *Liebig's Extract of Meat Co. Ltd.* v. *Walker,* 115 Fed. Rep. 822. They will not be permitted to use a name and label so closely resembling the plaintiff's that ordinary purchasers, giving such attention as they usually do in buying this class of goods, are likely to mistake their goods for those of the plaintiff. They cannot, in effect, represent that the washing fluid they manufacture is the familiar article of the plaintiff, and thereby sell their goods on the reputation which it has established in the market. The findings of the trial judge show a flagrant violation of the plaintiff's rights in the case at bar. Each of the defendants has adopted and used a label that is almost an exact copy of the plaintiff's label; and they have done so "for the purpose of leading the public to believe that the goods so labelled were manufactured by the plaintiff and its predecessors." It is apparent from the exhibits in the record that the average purchaser, having in memory the general impression of the plaintiff's label, and buying with ordinary caution, is likely to be misled by these imitations. *N. K. Fairbanks Co.* v. *R. W. Bell Manuf. Co.* 77 Fed. Rep. 869. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154. *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85. *C. A. Briggs Co.* v. *National Wafer Co.* 215 Mass. 100.

Obviously it is no defense that the fluid made by the defendants is "of practically identical composition and excellence" with that of the plaintiff. They have no right to divert the trade intended for the plaintiff, and incidentally to deceive the public. *Pillsbury* v. *Pillsbury-Washburn Flour Mills Co.* 64 Fed. Rep. 841. *Scriven* v. *North,* 134 Fed. Rep. 366. The failure of the plaintiff to object earlier to the manufacture and sale of the water by the defend-

ants, and its temporary acquiescence while litigation was pending as to the ownership of its trade mark, do not establish an abandonment or waiver of its rights: and the defendants have not acted on the faith of its non-interference in a way to give rise to equities in their favor based on estoppel. *Noera* v. *Williams Manuf. Co.* 158 Mass. 110. *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437. *Nelson* v. *Winchell & Co.* 203 Mass. 75.

We do not deem it necessary to consider whether the registration of the trade name and label conferred upon the plaintiff any new or greater rights than those to which it was entitled at common law. In each case the plaintiff is entitled to a decree enjoining the defendants from manufacturing or selling cleansing or bleaching fluid under the name of "Kormon Water," "Cormond Water," "Cormon Water," "Eau de Kormon," "Eau de Cormond," or "Eau de Cormon;" and from putting up for sale or selling such fluid in bottles or other receptacles bearing a label so closely resembling that used and registered by the plaintiff and its predecessors in title as to be mistaken for it by the ordinary purchaser; and the cases are to be sent to a master to find and report what profits, and damages if any, the plaintiff is entitled to. *Regis* v. *H. A. Jaynes & Co.* 191 Mass. 245. *Forster Manuf. Co.* v. *Cutter-Tower Co.* 215 Mass. 136.

*Decree accordingly with costs.*

The cases were submitted on briefs.

*F. A. Pease & L. E. Wood,* for the defendants.
*A. G. Weeks,* for the plaintiff.