## GROCERS SUPPLY COMPANY *vs.* I. RENAUD COMPANY.

Bristol.    October 27, 1919. — November 26, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Trade Name. Damages,* In suit in equity. *Equity Pleading and Practice,* Findings by master. *Wrongdoer without Remedy.*

A master, to whom a suit to restrain an infringement of a trade name and label and for damages had been referred for the assessment of damages after a decree in accordance with a decision of this court that the plaintiff was entitled to an injunction, found that there was no conduct on the plaintiff's part which justified the defendant in believing that he acquiesced in the manufacture and sale of infringing substances unless the defendant "was so justified as a matter of law by the facts I find and report herein." He also found that previous to the suit against the defendant the plaintiff had successfully maintained a suit against another person to establish his right to the use of the trade name and that the defendant knew nothing of that suit, that thereafter he had called together many manufacturers of a substance of the same name as his "to fix a living price for their product," and that the name used by the plaintiff had come into general use and did not necessarily mean the product of the plaintiff alone. The evidence was not reported. *Held,* that the specific facts found by the master were not sufficient to warrant a ruling that as a matter of law the plaintiff had abandoned his rights.

The master in the suit above described found that the defendant purchased of a third party a substance under the same name as the plaintiff's and resold it, and that the profit to the defendant was the difference between the sum paid to the third party and the selling price. This sum was awarded as damages to the plaintiff. The defendant contended that he should be allowed to deduct a share of his general operating expenses. *Held,* that the contention could not be sustained, as this would permit the defendant to deduct the expense of carrying on a deliberate wrong against the plaintiff.

BILL IN EQUITY, filed in the Superior Court on April 4, 1910, and afterwards amended, to restrain the defendant from infringing upon a right of the plaintiff to the use of the trade names, "Kormon Water," "Cormond Water," "Eau de Kormon," "Eau de Cormond," and names of similar appearance, spelling or pronunciation, and for damages.

The suit formerly was before this court when, in a decision reported in 219 Mass. 576, on an appeal from a decree granting the relief prayed for, the decree was affirmed and the suit was remanded to the Superior Court for determination by a master of the plaintiff's damages. The suit then was referred to a master in the Superior Court. Among findings of the master were the following:

"I find that the defendant between the dates of September 27, 1909, and March 26, 1915, bought of one Wolfe, of Pawtucket, in the State of Rhode Island, a product made by said Wolfe, and known as Cormond Water or Kormon Water, being so labeled, and being of substantially the same nature as the product of the plaintiff, and resold the same in Fall River. The amount so purchased of Wolfe and resold during the above period was forty-three and one third gross. The amount received by the defendant upon these sales was $365.78. The defendant paid Wolfe $6 per gross, leaving its profits upon the sales $105.78."

"I am not able to find any conduct upon the part of the plaintiff during any part of the period from March 1, 1909, to March 26, 1915, which justified the defendant in believing that the plaintiff acquiesced in the manufacture and sale by the defendant of bleaching fluids under the name of Cormond Water or names similar thereto, unless it was so justified as a matter of law by the facts I find and report herein. . . .

"I am requested by the defendant to make the following findings, and I so find:

"That the plaintiff had during the year from January 1, 1909, to January 1, 1910, several competitors who sold their product as Kormon Water, Cormond Water, etc.

"That these met the plaintiff at its instance in October, 1909, to fix a living price for their product. They there spoke of themselves as manufacturers and dealers in Kormon Water.

"That neither then nor afterwards until about three months before bringing this action did the plaintiff make any objection to the defendant's manufacture and sale of its product as Cormond Water or the use of the offending label.

"That the only litigation concerning this subject matter in which the plaintiff was engaged in October, 1909, was the suit of Dupuis *et al. vs.* Joseph M. Adam, which concerned the right to the use of the name Kormon Water. It was a suit in equity, begun October 11, 1905. It was referred to a master March 28, 1906, who held hearings as follows: July 18, 25, and August 8, 1906. A temporary injunction restraining the defendant in that case from the use of the name and label Kormon Water issued December 5, 1905, and was never modified. Said Adam promptly gave up the business, and left Fall River the latter part of 1907. Although the case itself was not finally disposed of until December 6, 1909, when an entry of dismissal was made, the case was practically ended at the close of the last hearing by the master. The defendant in the present case knew nothing of this litigation.

"That the terms Kormon Water, Cormond Water, Eau de Kormon and Eau de Cormond are the names which have come into general use, especially among French speaking people, to designate bleaching water, and do not necessarily mean the product of the plaintiff alone."

The master found, as profits received by the defendant, from sales of Cormond Water from March 1, 1909, to September 27, 1909, $34.38; from sales of Cormond Water from September 27, 1909, to March 9, 1910, $166.25; from sales of bleaching fluid under name of Cormond Water March 9, 1910, to March 26, 1915 (labeled New England Washing and Bleaching Water), $493.05; from sales of Wolfe Water from September 27, 1909, to March 26, 1915, $105.78.

The defendant filed objections and exceptions to the report as follows:

"1. Although requested the master failed and refused to find and report that the plaintiff's conduct constituted acquiescence which precludes it from recovering profits from the defendant prior to the date of the plaintiff's talk with the defendant's agent.

"2. Although requested the master failed and refused to find and report that the defendant was justified in believing that the plaintiff acquiesced in its manufacture and sale of its product.

"3. The master finds and reports as the profits of the defendant upon its sales of goods bought of Wolfe to which the plaintiff is entitled its gross profits only, and although requested failed and refused to find that only the net profits are recoverable, or what such net profits were, or to make any finding thereon."

The suit was heard by *Sanderson*, J., upon the master's report and the exceptions and an interlocutory decree was entered by his order overruling the exceptions to the report and confirming it. Later, a final decree was entered awarding damages to the plaintiff in the sum of $1,075.88. The defendant appealed.

The case was submitted on briefs.

*F. A. Pease*, for the defendant.

*A. G. Weeks*, for the plaintiff.

BRALEY, J.    It having been decided in *Grocers Supply Co.* v. *I. Renaud Co.* 219 Mass. 576, that the plaintiff had acquired the exclusive right to make and vend in this Commonwealth a bleaching and cleansing fluid under the trade name of "Kormon" water and in connection with the sale to use a distinctive label, relief was granted enjoining the defendant from manufacturing and selling a similar fluid under the name adopted by the plaintiff and from putting it upon the market in bottles or other containers bearing a label of such similitude to the plaintiff's that the ordinary buyer would mistake the defendant's for the plaintiff's product, the case was referred to a special master "to find . . . what profits, and damages if any, the plaintiff is entitled to." The defendant upon the coming in of the original and supplemental reports alleged exceptions which having been overruled and, a final decree having been entered for the plaintiff, it appealed to this court.

While the former decision is decisive on the questions of liability for infringement and diversion of profits, the defendant contends under the first exception that the master should have found that the plaintiff's conduct constituted such acquiescence as to preclude

it from recovering profits during the period from March 1, 1909, to March 26, 1915. It is settled that both damages and profits are recoverable and the master expressly finds that there was no conduct òn the part of the plaintiff which justified the defendant in believing that the plaintiff acquiesced in the manufacture and sale of the fluid under the name "Kormon" water or names similar thereto "unless it was so justified as a matter of law by the facts I find and report herein." The evidence is not reported and in so far as the question of waiver and acquiescence was one of fact the finding of the master is conclusive, and the facts found are not sufficient as matter of law to establish an abandonment by the plaintiff of its rights for reasons stated in our former opinion. The first and second exceptions must be overruled. *Regis* v. *Jaynes & Co.* 191 Mass. 246. *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437. *Forster Manuf. Co.* v. *Cutter-Tower Co.* 215 Mass. 136.

Nor can the third exception, which is to the refusal of the master to find and rule that gross profits which the defendant received from certain sales should not be allowed, as only net profits were recoverable, be sustained. To allow the defendant, as now urged in argument, to charge upon the gross profits any share of its general operating expenses would be to permit it to take advantage of its own deliberate wrong when it intentionally palmed off its goods as having been made by the plaintiff. *Regis* v. *Jaynes & Co.* 185 Mass. 458, 462. *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437, 443, and cases cited.

The result is that, finding no error, the decrees are severally affirmed with costs of the appeal.

· *Ordered accordingly.*