SUMMERFIELD COMPANY OF BOSTON vs. PRIME FURNITURE
COMPANY.

Suffolk.    March 29, 1922. — June 28, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, & JENNEY, JJ.

*Unlawful Interference. Equity Pleading and Practice,* Master: objections and
exceptions to report, motion to recommit report; Appeal; Decree. *Equity
Jurisdiction,* To enjoin unlawful interference, Damages, Loss of profits.

An appeal from a final decree does not bring before this court objections to a
report of a master where the record does not disclose that exceptions based
on the objections were filed in accordance with Equity Rules 31, 32.

In a suit in equity in the Superior Court to enjoin unlawful interference with the
plaintiff's business by a competitor, the bill contained, besides prayers for
injunctions, a prayer for the ascertainment and award of the plaintiff's dam-
ages, but no prayer relating to the defendant's profits. The master, without
stating any reason therefor, made no finding as to damages, and, as to the
defendant's profits, stated: "The plaintiff proposed to offer evidence as to the
profits made by the defendant, claiming that if the court found that the defend-
ant was responsible on the facts above found, it was entitled to recover such
profits. Upon an inquiry by me the plaintiff stated that he was not prepared
to show that his business had fallen off in volume or amount by reason of the
acts complained of, but claimed that but for such acts, his business would
have been larger. I declined to enter into this inquiry without further order
of the court." No exception to the report was filed. From a final decree grant-
ing injunctive relief but no damages and not mentioning the defendant's prof-
its, the plaintiff appealed. *Held,* that, on the record, no question concerning
profits or damages was before this court for determination.

The distinction, in a suit in equity based on unlawful interference by the defend-
ant with business of the plaintiff, between damages suffered by the plaintiff
and profits realized by the defendant, is well settled.

The record above described also showed that the plaintiff moved orally in the
Superior Court that the master's report be recommitted for a hearing on the
question of damages, that the motion was denied and that the plaintiff appealed
from such denial. *Held,* that no error of law was disclosed.

In the suit above described, the master found in substance that, at a time when
the plaintiff, a corporation, had been established in the retail furniture busi-
ness at a store on Washington Street in Boston for a considerable time, doing
business largely on the instalment plan under the trade legend, "House of
Dignified Credit," and had been an extensive advertiser well known to the
public, the defendant, another corporation, engaged in the same business and
became the tenant occupying an adjoining store which many customers natu-
rally would pass to reach the plaintiff's store; and, having as its general man-

ager and as some of its salesmen persons formerly employed by the plaintiff, it entered upon a course of conduct designed to make its store appear to be the store of the plaintiff. Among other means adopted to that end were the alteration of the front of its store, the dressing and the adornment of its show windows, the display and arrangement of its goods for sale, the adoption of stationery, forms of conditional sale, leases and receipts, and the use of a similar business motto, "House of Dependable Credit," all in imitation of the plaintiff's store and business. The signs bearing the defendant's name were so arranged as not to be observed by those walking on the adjacent sidewalk. This conduct was calculated to make passers-by and prospective customers think that the defendant's store was the store of the plaintiff. Other active and passive misrepresentations were employed to the same end in treatment of customers entering the defendant's store under the impression that it was the store of the plaintiff. *Held,* that the plaintiff was entitled to relief, based on the existence of an acquired reputation and good will in connection with a business recognized as a property right which should be protected against unfair methods of competition by rivals.

In the suit above described, the defendant appealed from a final decree permanently enjoining the defendant, its officers, agents and servants, (1) "from maintaining its premises in such manner as to give them the appearance of being those of the plaintiff . . . (2) from maintaining an appearance to its premises likely to induce customers to enter upon the defendant's premises in the belief that they were entering the plaintiff's premises;" (3) ordering them forthwith to "place and maintain in and upon the defendant's premises, in conspicuous place or places, signs readily legible by and visible to persons approaching the defendant's store upon sidewalks adjacent thereto which shall clearly indicate the ownership of the defendant's establishment;" (4) permanently enjoining them "from conduct, either active or passive, calculated to deceive the purchasing public into the belief that they are dealing with the plaintiff when in fact they are dealing with the defendant, and to this end the defendants, their officers, agents, and servants, be, and they hereby are, enjoined from continuing the use of stationery so similar to the plaintiff's stationery as to be capable of being used in a deceptive manner; and from dressing their windows in a manner or style in which for the time being the plaintiff is dressing its windows, or with reference to merchandise specially advertised for the time being by the plaintiff in such manner as is likely to cause persons to believe the windows are in the plaintiff's store, and from any form of misrepresentation to prospective purchasers indicating directly or by inference that the plaintiff and defendant are in any way associated or connected in business, or that the plaintiff's employees are or have been connected with or employed by the defendant, and from giving to prospective purchasers in any other ways by conduct or conversation the impression that the defendant's place of business is the plaintiff's . . . (5) from continuing the use, either in its advertisement or stationery or otherwise, of the phrase, 'The House of Dependable Credit'" (6) and directing them "to disclose the actual ownership and management of the defendant's establishment to any and all persons in and upon its premises dealing with it under the apparent belief that they are in or upon the plaintiff's premises or are dealing with the plaintiff." *Held,* that

(1) The decree was adapted in a commercially reasonable sense to protect the plaintiff in its rights and to restrain the defendant from unwarranted acts;

(2) The paragraphs in the decree numbered 1 and 2 meant that, as to those matters of decoration and adornment commonly within the control of a tenant, the defendant's premises were not to be so maintained as to deceive the public into thinking that they were being occupied by the plaintiff, and those paragraphs were not objectionable as relating to the architectural design of premises held by the defendant as lessee;

(3) Each of the other paragraphs of the decree, whether mandatory or restrictive, was adapted to a particular act done by the defendant as shown by the master's report in furtherance of the decree's general purpose;

(4) There was nothing in the paragraph numbered 3 in the decree which required the defendant to maintain a sign over the sidewalk or to do anything in any particular in violation of an ordinance or law.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 21, 1921, alleging unlawful interference by the defendant with the plaintiff's business, and seeking to enjoin such conduct. The ninth prayer of the bill was as follows: "That the damages of the plaintiff may be ascertained and that a judgment for the same may be entered against the defendant." There also was a prayer for general relief, but no prayer relating specifically to loss of profits by the plaintiff, or to the diverting of profits to the defendant.

The suit was referred to a master. The master's report contained the following statement: "The plaintiff proposed to offer evidence as to the profits made by the defendant, claiming that if the court found that the defendant was responsible on the facts above found, it was entitled to recover such profits. Upon an inquiry by me the plaintiff stated that he was not prepared to show that his business had fallen off in volume or amount by reason of the acts complained of, but claimed that but for such acts, his business would have been larger. I declined to enter into this inquiry without further order of the court."

It appeared that the plaintiff used in its business, on its signs and its literature, the legend, "Home of Dignified Credit," while the defendant used the legend, "Home of Dependable Credit." Other material findings by the master are described in the opinion. The printed record before this court contained objections to the report, filed by the defendant, but no exceptions filed by the defendant. The proceedings relating to the plaintiff's oral motion that the report be recommitted to the master are described in the opinion. There was an appeal by the plain-

tiff from the denial of that motion.    There did not appear in the printed record any interlocutory decree or order confirming the master's report.

A final decree was entered by order of *Crosby*, J., permanently enjoining the defendant, its officers, agents and servants, (1) "from maintaining its premises in such manner as to give them the appearance of being those of the plaintiff" and (2) "from maintaining an appearance to its premises likely to induce customers to enter upon the defendant's premises in the belief that they are entering the plaintiff's premises;" (3) ordering them forthwith to "place and maintain in and upon the defendant's premises, in conspicuous place or places, signs readily legible by and visible to persons approaching the defendant's store upon sidewalks adjacent thereto which shall clearly indicate the ownership of the defendant's establishment;" (4) permanently enjoining them "from conduct, either active or passive, calculated to deceive the purchasing public into the belief that they are dealing with the plaintiff when in fact they are dealing with the defendant, and to this end the defendants, their officers, agents, and servants, be, and they hereby are, enjoined from continuing the use of stationery so similar to the plaintiff's stationery as to be capable of being used in a deceptive manner; and from dressing their windows in a manner or style in which for the time being the plaintiff is dressing its windows, or with reference to merchandise specially advertised for the time being by the plaintiff in such manner as is likely to cause persons to believe the windows are in the plaintiff's store, and from any form of misrepresentation to prospective purchasers indicating directly or by inference that the plaintiff and the defendant are in any way associated or connected in business, or that the plaintiff's employees are or have been connected with or employed by the defendant, and from giving to prospective purchasers in any other ways by conduct or conversation the impression that the defendant's place of business is the plaintiff's . . . (5) from continuing the use, either in its advertisement or stationery or otherwise, of the phrase, 'The House of Dependable Credit,' " (6) and directing them "to disclose the actual ownership and management of the defendant's establishment to any and all persons in and upon its premises dealing with it under the apparent belief that they are in or upon

the plaintiff's premises or are dealing with the plaintiff" (7) and awarding the plaintiff costs in the sum of $117.50.

Both parties appealed from the final decree.

*Lee M. Friedman,* (*P. D. Turner* with him,) for the plaintiff.

*E. Greenhood,* (*A. A. Ginzberg* with him,) for the defendant.

RUGG, C.J. This suit in equity was brought to restrain the defendant from unfair trade competition with the plaintiff. The case was referred to a master. The rule required him "to hear the parties and their evidence, to find the facts, and report the same to the court."

Certain objections to the master's report are printed in the record, but no exceptions were filed as required by Equity Rules 31 and 32. Such objections are not before us. Therefore, on the appeals of both parties, there is nothing before us except the pleadings, the master's report, the interlocutory decree and the final decree. *Smedley* v. *Johnson,* 196 Mass. 316, 317. *Capen* v. *Capen,* 234 Mass. 355, 362.

No question rightly can be raised at this time concerning profits or damages. The master declined to go into the question of profits. No exception was taken. The correctness of that action is not before us. The master made no findings concerning damages. No reason for this is stated. The bill contains no prayer for damages, but only for profits. Here again no exception was saved. The distinction between recovery of profits and recovery of damages is well settled. *Forster Manuf. Co.* v. *Cutter-Towner Co.* 215 Mass. 136.

The interlocutory decree denying the plaintiff's oral motion made in open court to recommit the report for hearing before the master on the question of damages discloses no error of law. The motion was not in writing and hence we have no means of ascertaining its alleged grounds. It could not have been founded on exceptions because none were filed. There is nothing in the record to indicate what occurred before the single justice at the hearing on this motion. As was said in *Regis* v. *H. A. Jaynes & Co.* 191 Mass. 245, at page 247, "If it appears that the amount of damage to the plaintiff or of profits realized by the defendant is only insignificant, or that no actual damage has been sustained, the court may confine its relief to an injunction." *Giragosian* v. *Chutjian,* 194 Mass. 504. For aught that appears,

the single justice in hearing the motion to recommit may have gone into evidence as to the facts and found that there was no warrant for assessment of damages or profits. *Baush Machine Tool Co.* v. *Hill,* 231 Mass. 30, 41. *W. B. Manuf. Co.* v. *Rubenstein,* 236 Mass. 215, 220. The oral motion was addressed wholly to the discretion of the single justice. Such a motion ordinarily is not granted in the absence of some special reason. *Smith* v. *Lloyd,* 224 Mass. 173, 175. *Cunningham* v. *Worcester Five Cents Savings Bank,* 223 Mass. 361. The facts found by the master do not require the inference of damages or loss of profits.

There was no error in the final decree. Summarily stated the master's report shows that, the plaintiff having been established at a store on Washington Street in Boston in the retail furniture trade for a considerable time largely on the instalment plan and having been an extensive advertiser and having become well known to the public by these and other means, the defendant engaged in the same business and became tenant of an adjoining store past which many customers would naturally go to reach the plaintiff's store. The defendant, having as its general manager and as some of its salesmen those formerly employed by the plaintiff, entered upon a course of conduct designed to make its store appear to be the store of the plaintiff. Among other means chosen to that end were the alteration of the front of its store, the dressing and the adornment of its show windows, the display and arrangement of its goods for sale, the adoption of stationery, forms of conditional sale, leases and receipts, and the use of a similar business motto. These were all in imitation of the plaintiff's store and business. The signs of the defendant were so arranged as not to be observed by those walking on the adjacent sidewalk. This conduct was calculated to make passersby and prospective customers think that the defendant's store was the store of the plaintiff. Other active and passive misrepresentations were employed to the same end in treatment of customers entering the defendant's store under the impression that it was the store of the plaintiff.

The case thus made out by the plaintiff differs in form from most instances of unfair trade competition hitherto presented. No trademark here is involved. The nearest approach to piracy

of a trademark is the use of a mercantile motto similar in sound, form and meaning to that used by the plaintiff and likely to be mistaken for it.  The underlying principle, which is the foundation of equitable relief in this class of cases, is that one trader shall not compete with another for public patronage by adopting intentionally means adapted to deceive the public into thinking that it is trading with the latter when in fact dealing with the former, and thus palming off his goods as those of another. The relief is based on the existence of an acquired reputation and good will in connection with business recognized as a property right which will be protected against unfair methods of competition by rivals.  The defendant has equal right with the plaintiff to solicit the patronage of the public.  But it has no right intentionally to mislead the public to the harm of the plaintiff even in competition.  Equity will use practicable precautions to prevent the defendant from deceitfully diverting the plaintiff's custom while at the same time permitting the defendant to carry on its lawful business by any appropriate competitive methods.  The principle finds frequent expression in cases of the wrongful use of trademarks or other devices or designations which have become so connected with particular goods as to indicate the source of manufacture or trade to the general public. *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85.  *Flagg Manuf. Co.* v. *Holway*, 178 Mass. 83.  *Regis* v. *H. A. Jaynes & Co.* 191 Mass. 245.  *W. B. Manuf. Co.* v. *Rubenstein*, 236 Mass. 215.  *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437.  *Marsh* v. *Billings*, 7 Cush. 322.  The principle is not confined to any one set of facts.  It is applicable wherever deceit is practised to the harm of a rival for the attraction of patronage.  A person has a legal right to be protected in the good will of his business against such an attack.  *Hildreth* v. *D. S. McDonald Co.* 164 Mass. 16.  *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154.  *Grocers Supply Co.* v. *Dupuis*, 219 Mass. 576; *Grocers Supply Co.* v. *I. Renaud Co.* 234 Mass. 180.  *Hanover Star Milling Co.* v. *Metcalf*, 240 U. S. 403.  *Weinstock, Lubin & Co.* v. *Marks*, 109 Cal. 529. *Kimball* v. *Hall*, 87 Conn. 563.  *Yellow Cab Co. Inc.* v. *Becker*, 145 Minn. 152.  *W. & G. Du Cros* v. *Gold*, 29 T. L. R. 163.  *O. & W. Thum Co.* v. *Dickinson*, 158 C. C. A. 37; 245 Fed. Rep. 609.

*United Cigar Stores Co. of America* v. *United Confectioners*, 92 N. J. Eq. 56, affirmed in 92 N. J. Eq. 449.

The facts set forth in the master's report bring the defendant within the scope of this principle.

The final decree is adapted in a commercially reasonable sense to protect the plaintiff in its rights and to restrain the defendant from unwarranted acts. The first two paragraphs do not relate to architectural design of the building. They simply mean that, as to those matters of decoration and adornment commonly within the control of a tenant, its premises are not to be so maintained as to deceive the public into thinking them to be occupied by the plaintiff. The other paragraphs, whether mandatory or restrictive in nature, are each adapted to a particular act done by the defendant as shown by the master's report in furtherance of its general purpose. There is nothing in the third paragraph which requires the defendant to maintain a sign over the sidewalk or to do anything in any particular in violation of an ordinance or law.

*Decree affirmed without costs to either side.*