FORSTER MANUFACTURING COMPANY *vs.* CUTTER-TOWER COMPANY.

Suffolk.    December 7, 1911. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Unfair Competition. Equity Jurisdiction,* To restrain unfair competition, Damages.

A manufacturer of toothpicks, who has established a valuable business and has adopted a box or package of distinctive size and shape bearing a characteristic design in colors, may maintain a bill in equity to restrain a wholesale dealer in toothpicks from selling toothpicks, not manufactured by the plaintiff, in boxes or packages made in exact imitation of those of the plaintiff, with the exception of the plaintiff's monogram, for the purpose of obtaining the trade of a jobber whom the plaintiff had been supplying. In such a suit it is immaterial that the immediate purchaser from the defendant was not deceived as to the identity of the goods, and the plaintiff need not show that specific buyers from such purchaser were deceived or that the defendant intended to deceive the public, he being bound to know the probable consequences of supplying the means of deception.

In a suit in equity by a manufacturer to restrain the defendant from selling goods in packages of distinctive design like those which the plaintiff had established the exclusive right to use in his business, where it is shown that the defendant wrongfully caused his packages to be made in deliberate imitation of those of the plaintiff for the purpose of acquiring as far as possible the plaintiff's customers and trade, the defendant may be liable not only for the damage suffered by the plaintiff but also to account to the plaintiff for any profits which may have accrued to the defendant from his use of the imitation packages.

BILL IN EQUITY, filed in the Supreme Judicial Court on June 20, 1910, to restrain the defendant from selling, offering or advertising for sale any toothpicks, not manufactured by the plaintiff, in packages like those of the plaintiff or in any packages so similar as to be likely to cause the defendant's goods to be mistaken for the plaintiff's goods, and to recover damages and the

profits which had accrued to the defendant from its alleged un-lawful acts.

The case was referred to Edward S. Goulston, Esquire, as master. The facts found by the master are stated or referred to in the opinion. The master's findings as to the acts of the defendant were as follows:

"8. The defendant markets its toothpicks under a great many brand names and in many different forms of package and trade dress, and has probably the largest toothpick business in the United States; prior to the sale to the William Edwards Company hereinafter referred to, the defendant was acquainted with the plaintiff's package and was not marketing any package with a design bearing any resemblance to the design on the plaintiff's package, nor does there appear to have been any reason for the defendant to have marketed any package with a design resembling that of the plaintiff except to secure the business of the William Edwards Company as hereinafter set out.

"9. In February, 1909, that is, about a year and a half after the plaintiff had first sold to the William Edwards Company a brand of toothpicks under the name of the 'Edwards Toothpick' and packed in the plaintiff's jobbers' brand package, a salesman of the defendant called on the William Edwards Company and solicited its business. Prior to this the defendant had been sell-ing the William Edwards Company the defendant's Ideal Brand of toothpicks in packages wholly different from the plaintiff's. The William Edwards Company told the defendant's salesman that it was having the Edwards toothpick made, and the defendant's salesman requested the right to figure and afterwards obtained an order from the William Edwards Company for the Edwards toothpick, agreeing to duplicate the package. The defendant thereafter made for the William Edwards Company the Edwards toothpick, making substantially an exact copy of the plaintiff's package with the exception of the omission of the plaintiff's monogram on the side of the package; the box maker who made the defendant's boxes for said Edwards toothpick was furnished by the defendant with one of the plaintiff's packages with directions to duplicate the same, omitting the plaintiff's monogram, and practically did duplicate the same except as to the monogram. At the time the defendant took said order from and

ordered the boxes for the William Edwards Company it was familiar with the plaintiff's package, and knew that the monogram on the plaintiff's package indicated the plaintiff was the manufacturer, and the defendant would not have obtained the order from the William Edwards Company except for its offer to furnish the same package under a lower price. . . .

"10. After the sale to the William Edwards Company the defendant sold to a number of other dealers toothpicks in packages bearing the design complained of, but with the exception of the Edwards brand all the defendant's goods sold in said packages were marketed with brand names which were different from any brand names used by the plaintiff. In three instances of sales by the defendant of toothpicks in boxes bearing the design complained of . . . the customer had previously carried in stock and sold the plaintiff's toothpicks packed in either its factory or jobbers' package.

"11. No notice was given to the defendant by the plaintiff of its claim to the exclusive use of the package and trade dress before the bringing of the bill of complaint; after suit was brought the defendant filled orders which it had theretofore taken for toothpicks packed in the packages complained of, but has since taken no new orders for goods packed in similar packages.

"12. The plaintiff offered no evidence of actual deception, or any evidence of public recognition or reputation of its package except the presumption of such public recognition and reputation as may arise from the plaintiff's extensive marketing of its product in such package. The defendant's customers knew that they were getting the defendant's goods and not the plaintiff's goods. There is no evidence of the defendant's passing off its goods as and for the goods of the plaintiff."

The case came on to be heard before *Morton*, J., who reserved it upon the pleadings and the master's report for determination by the full court. If this court should determine that the plaintiff was entitled to the relief prayed for, the case was to stand for further hearing upon the question of damages and profits; otherwise, such decree was to be entered as to the court should seem meet.

*R. Cushman*, (*C. D. Woodberry* with him,) for the plaintiff.

*W. A. MacLeod*, (*W. A. Copeland* with him,) for the defendant.

BRALEY, J.  The plaintiff corporation, as found by the master, began the manufacture and sale of toothpicks five years and more before the bill was filed, and during this period has established a valuable business.  It adopted in the marketing of the product a box or package of distinctive size and shape bearing in colors a characteristic design so collocated as to make the combination dissimilar from any label, form of package, or dress of goods then in use by other manufacturers or dealers.  During the development of its trade a certain proportion of the packages had the imprint of the name of various jobbers to whom the exclusive sale of the goods had been given, or of some fanciful word or phrase suggested by them, and the entire production became classified as either the factory brand sold generally to the jobbing trade under brand names used only by the plaintiff, or the jobber's brand.  But while the color of the printing and of the background on the factory brand differed from the jobber's brand, the quality of the goods was uniform, and every package as it left the factory bore the monogram of the plaintiff, with the further distinguishing design of a wreath overlapped by a curved band with an escalloped gold edge.  The plaintiff upon these findings, while claiming no rights of property in the brand name used by the jobber, had acquired a reputation and good will in connection with, and as a part of its business, which generally is recognized as a property right, and will be protected against the unfair competition of rival manufacturers or dealers in similar products.  *George G. Fox Co.* v. *Glynn,* 191 Mass. 344, 349.  *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437, 438.  *Draper* v. *Skerrett,* 116 Fed. Rep. 206.

It is wholly immaterial, where this right has been invaded, that the retail or wholesale dealer who may be the immediate purchaser of goods put out in imitation is not misled as to their identity.  The wrong of unfair competition is present where goods are so dressed in form, or marked by decorative symbols, that the ultimate consumer when the goods are distributed for use in the ordinary course of trade, either is, or possibly may be, deceived.  The liability to deception being the test, it also is not necessary to show that specific buyers have been actually deceived or that the infringer intended to deceive the public.  He is bound to know the probable consequences, where the means

of such deception have been supplied by him. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154. *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437, 440, 441, and cases there cited.

The defendant, for the purpose of acquiring the extensive trade of a jobber with whom the plaintiff did business, deliberately duplicated the plaintiff's box or package in every particular with the exception of the monogram, and thereafter these receptacles filled with toothpicks in which the defendant although not a manufacturer very largely dealt, were widely distributed to consumers through dealers in the trade to whom it sold them. This misappropriation having been an invasion of the plaintiff's exclusive right to the form, style and dress of the box or package in which its goods had been marketed, it is entitled to injunctive relief even if the defendant had acted innocently. But as the defendant must be presumed to have contemplated the probable effect of its purpose to acquire so far as possible the plaintiff's customers and trade, it is liable for both actual damages, and profits, if any, realized from the sale of toothpicks in the imitation packages. *Regis* v. *Jaynes,* 191 Mass. 245. *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437, 441–443. By the terms of the reservation of the single justice, the case is to stand for further hearing upon these questions.

*Decree accordingly.*