NEW ENGLAND CONFECTIONERY COMPANY *vs.* C. A. BRIGGS
COMPANY.

Suffolk.    March 17, 1926. — June 28, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, &
SANDERSON, JJ.

*Unfair Competition.    Unlawful Interference.    Label.*

A master, to whom was referred a suit in equity to enjoin the defendant
from alleged unlawful interference with the plaintiff's business by the
use of a label and wrapper on rolls of candy wafers in alleged imitation of
a label and wrapper used by the plaintiff, found that both parties had
been selling such rolls in substantially the same market for years; that
in 1922 the defendant thought that the plaintiff's wafer roll was the
largest selling roll on the market, and as a consequence a designer was
consulted, shown the label of the plaintiff, and asked to design some-
thing better; that various designs were offered by the designer and
discussed by him with the defendant and finally the label complained
of was adopted.    The master further found: "There was no evidence
presented showing that the defendant had passed off its wafers as
and for the wafers of the plaintiff . . . nor was there any evidence
that anyone desiring to buy the wafers of the plaintiff as distinguished
from any other wafers had been deceived into accepting the wafers
of the defendant as and for the wafers of the plaintiff . . . the sales of
the wafers of the plaintiff have increased since 1922 when the label
complained of was adopted by the defendant."    The master refused to
find that the defendant intended that his label "should resemble the
label of the plaintiff to a degree that it should be taken by the purchas-
ing public, or some part thereof, as the product of the plaintiff," and
the plaintiff excepted to the refusal.    The evidence was not reported.
*Held*, that the refusal was not unwarranted.

In the suit above described, the master found that persons of normal vision,
using such care and observation as the public generally are expected to
use in such matters, would not be likely to mistake the label of the de-
fendant for that of the plaintiff.    The plaintiff excepted for the reason
that the statement was one of law and not of fact, and for the further
reason that the master "refused to find, though requested by the plain-
tiff to so find, what kind of care and observation the public use in the
purchase of products such as the plaintiff's and defendant's candy
wafers."    *Held*, that

(1) When applied to his other rulings, a mixed question of law and
of fact was presented by the statement by the master excepted to;

(2) The master found in effect that an ordinary, prudent man en-
dowed with normal vision in the circumstances here presented would
not be deceived: this finding was adequate;

(3) No error was shown.

The master in the suit above described found that the plaintiff's wafer rolls were a simple form of candy, "retailed at such low figures that they especially appeal to and find a large market among children, foreigners and illiterates"; that they were sold in large quantities to the travelling and amusement seeking public in the baskets or trays of train boys, or on the counters of news or candy stands as well as by other small shopkeepers and petty retailers, rolls being displayed in arrangement side by side so as to catch the eye of the chance passer-by. He further found that there was no evidence of intent on the part of the defendant to use a label that would be mistaken for that of the plaintiff unless the adoption and use of the label complained of be regarded as such evidence. The bill was dismissed. Upon appeal by the plaintiff, this court *held*, that

(1) An inspection of the labels did not show that the defendant's labels were deceptively similar to the plaintiff's within the rule that to justify the interference of a court of equity the similarity in the labels must be such as to deceive or mislead the ordinary purchaser so that such purchaser would be unable at once to discriminate between the wafers sold by the plaintiff and those sold by the defendant;

(2) In view of his other findings, the master could not consistently have granted a request by the plaintiff for a finding that the "public would be confused into believing that the defendant's product is the plaintiff's if both are sold in the trade";

(3) The test was the effect on persons of average intelligence and on persons of ordinary prudence and caution among those who purchase the class of goods in question, and the judge was right in disregarding the effect on such persons as "children, foreigners, and illiterates," who are not endowed with intelligence, vision, prudence and caution;

(4) The decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on February 27, 1923, to enjoin the defendant from the use of a label and wrapper for rolls of candy wafers which were alleged to constitute an unlawful interference with the plaintiff's business because they were an unlawful imitation of a label and wrapper used by the plaintiff.

The suit was referred to a master. Material facts found by the master and exceptions to his report relied on by the plaintiff are stated in the opinion. The twelfth exception was to a failure by the master to find that "there was evidence indicating that retailers are engaged in attempting to palm off the defendant's wafer roll for the plaintiff's."

The suit was heard upon the plaintiff's exceptions to the master's report and upon the question of a final decree by *Morton*, J., who filed the following ruling:

"The question argued before me upon the entry of a final decree was whether the following finding of the master, taken in connection with the other facts found by him, was warranted as a matter of law. The master has found that there was no 'intent on the part of the defendant to use a label that would be mistaken for that of the plaintiff, unless the adoption and use of the label complained of be regarded as such evidence.' He also found that 'Persons of normal vision using such care and observation as the public are expected to use in such matters would not be likely to mistake the label of the defendant for that of the plaintiff.' After careful inspection of the labels and consideration of all the facts found by the master I am of the opinion that the above finding was warranted, and a decree should be entered dismissing the bill."

An interlocutory decree overruling the plaintiff's exceptions, denying a motion for a recommitment of the report and confirming the report, and a final decree dismissing the bill accordingly were entered. The plaintiff appealed.

The case was argued at the bar in March, 1926, before *Rugg*, C.J., *Crosby, Pierce, Carroll,* & *Wait*, JJ., and afterwards was submitted on briefs to all the Justices.

*A. J. Santry*, for the plaintiff.

*J. H. Powers*, (*R. Donovan* with him,) for the defendant.

PIERCE, J. The case comes before this court on appeals of the plaintiff from the interlocutory decree overruling its exceptions to and confirming the report of the master, to a denial of its motion to recommit the report, and to the final decree dismissing the bill of complaint with costs.

The material facts found by the master briefly stated are as follows: Both the plaintiff and defendant were incorporated in 1901 and since that time have been engaged in the manufacture of candy, the business of the plaintiff being in Boston and that of the defendant in Cambridge. The bill charged that the defendant was engaged in unfair competition, in that it had copied for a wrapper of a candy wafer, manufactured and sold by it, a label used by the plaintiff on its own candy wafer wrapper; that the defendant's label was an imitation of the plaintiff's, which the latter had recorded as

a label for candy with the Secretary of the Commonwealth, on December 4, 1922, No. 9742. The wafers of the plaintiff are sold throughout the United States, have a large sale in New England and Massachusetts, and are well known to the public; the wafers sold by the defendant are sold throughout the United States, but there is no evidence as to the amount of sales. For many years wafers in plain and in assorted flavors have been sold in rolls, varying in weight from two and one half ounces to three ounces. Formerly, wafer rolls were wrapped in opaque glazed paper, but in 1910 the plaintiff and defendant both used transparent paper, the plaintiff a little earlier than the defendant. The plaintiff and defendant are competitors in business. The wafer rolls of each retail for five cents per roll.

"The plaintiff's wafer rolls are a simple form of candy and are retailed at such low figures that they especially appeal to and find a large market among children, foreigners and illiterates. They are sold in large quantities to the travelling and amusement seeking public, on trains, excursion boats and other conveyances, in railway stations waiting rooms, and in recreation parks, and other places of amusement. They are offered for sale in the baskets or trays of train boys, or on the counters of news or candy stands located in subway or railroad stations or on boats or in amusement resorts, as well as by other small shopkeepers and petty retailers; ordinarily a considerable number of said packages or rolls being arranged side by side in a box or tray carried about by the vendor, or lying upon the counter or in the shop window, and so displayed as to catch the eye of the chance passer-by."

In May, 1906, the plaintiff adopted a label which had a seal in the center with the word "Necco" on the left and the word "Wafers" on the right. This label had solid black lettering on yellow glazed paper. Since that time "Necco Wafers" have been sold by the plaintiff always in a roll and since 1914 in transparent paper. The label used has always borne a seal which is the trade mark of the plaintiff and is registered in the United States Patent Office and has the word "Necco" on the left of the seal and the word "Wafers"

on the right, the words always having been of substantially the same size as the plaintiff's present label. In 1910 the plaintiff put wafers called the "Peerless Wafers" and "Hub Wafers" in transparent paper, the words "Hub" and "Wafers" being in blue letters and the Necco seal in red, the blue and red being the same or nearly the same shade as those used in the present roll. In 1914 the plaintiff put out "Necco Wafers" in transparent paper with the words "Necco" and "Wafers" in blue and the seal between in red. The label was printed once on the roll until 1921. This is known as single printing. Double printing, that is printing the label twice on the roll, was first used by the plaintiff in July, 1921. Double printing was not used on wafer rolls prior to 1921 and has not since been used except by the plaintiff and the defendant. Having the double form of label the roll of the plaintiff has become widely and popularly known.

The defendant has manufactured and sold Boston Wafers since 1906, but the record does not disclose the extent of the sales or whether they were equal to the sales of the plaintiff. Before 1910, the defendant used for the rolls a wrapper of opaque yellow paper, on which was printed a scroll with the word "Boston" on the left and the word "Wafers" on the right, the lettering being in black. In 1910 the defendant adopted a transparent paper with a scroll in the center, the word "Boston" on the left and the word "Wafers" on the right, the lettering and the scroll being in blue. In 1917, the defendant adopted a label with the word "Briggs" in the center, the word "Boston" on the left and the word "Wafers" on the right, the word "Briggs" being in red and "Boston" and "Wafers" in blue. The defendant did not use the scroll on its label from 1917 to 1922.

In June, 1922, the defendant adopted its present label, which has in a scroll lined in red on a white background the words "C. A. Briggs's Co." in red; and on the left of the scroll, the word "Boston" and on the right the word "Wafers," both in blue. The blue color in the label of 1922 was darker than that previously used by the defendant, and the words were larger, the area of blue and red colors being about three times the color area in the defendant's prior label.

On this label the defendant first used double printing, and the report states that it did not appear that prior to this time double printing had been used by any one other than the plaintiff, who used it for the first time in July, 1921.

"Prior to the adoption of the label complained of in 1922 an employee of the defendant suggested that a new label be adopted by the defendant. At this time the defendant thought that the plaintiff's wafer roll was the largest selling roll on the market. A designer was consulted, shown the label of the plaintiff and asked to design something better. Various designs were offered by the designer and discussed by the defendant's president, two employees and the designer. Finally the label complained of was adopted."

The master found that the label of the defendant adopted in 1922 resembles that of the plaintiff in the following particulars: (A) "The words 'Necco Wafers' and 'Boston Wafers' are blue and of the same shade or nearly so"; (B) "The scroll used by the defendant is of the same shade of red as the seal used by the plaintiff"; (C) "The area of the letters forming the words 'Boston Wafers' is nearly the same as the area of the letters forming the words 'Necco Wafers', the area of the letters forming the words on the defendant's label being about 9% less than the area of the letters forming the words on the plaintiff's label"; (D) "The area of the scroll on the defendant's label is nearly the same as the area of the seal on the plaintiff's label"; (E) "The height of the letters forming the words 'Boston Wafers' is nearly the same as the height of the letters forming the words 'Necco Wafers' "; (F) "The label of the defendant like that of the plaintiff has double printing"; (G) "The label of the defendant has a general resemblance to that of the plaintiff there being two words of blue in each label with a red symbol between the words"; and differs from that of the plaintiff in the following particulars: (A) "The word on the left in the defendant's label is 'Boston' while on the plaintiff's label it is 'Necco'"; (B) "The shape of the letters forming the words 'Boston Wafers' is not the same as the shape of the letters forming the words 'Necco Wafers'"; (C) "The shape of the scroll on the label of the defendant is not the same as the shape of the seal

on the label of the plaintiff"; (D) "The letters of the scroll on the label of the defendant are red and the background white while the letters of the words 'Necco Sweets' on the seal of the plaintiff are white and the background is red"; (E) "On the scroll of the label of the defendant the prominent words are 'C. A. Briggs Company' while the prominent words on the seal of the plaintiff are 'Necco Sweets,' in both cases the words being in fine print."

The evidence not being reported, the master made the following findings, which the judge of the Superior Court, "after careful inspection of the labels and consideration of all the facts found by the master," adopted and found warranted, namely:

"14. I find no evidence of intent on the part of the defendant to use a label that would be mistaken for that of the plaintiff unless the adoption and use of the label complained of be regarded as such evidence.

"15. I find that the sales of the 'Boston Wafers' increased after the adoption of the new label in 1922 but there was no evidence that the increase of sales of wafers of the defendant was in a greater proportion than the increase of the sales of other goods manufactured by the defendant. There was no evidence of the amount of the defendant's sales.

"16. There was no evidence presented showing that the defendant had passed off its wafers as and for the wafers of the plaintiff unless certain testimony regarding the price at which Boston Wafers were sold, and which was excluded, would have constituted such evidence; nor was there any evidence that any one desiring to buy the wafers of the plaintiff as distinguished from any other wafers had been deceived into accepting the wafers of the defendant as and for the wafers of the plaintiff. I find that the sales of the wafers of the plaintiff have increased since 1922 when the label complained of was adopted by the defendant.

"17. I find that the defendant after complaint was made by the plaintiff continued to use the label complained of claiming that it was within its rights in so doing.

"18. I find that the label of the plaintiff was registered under the provisions of Massachusetts G. L. c. 110, § 8, in

December, 1922. I also find, if it be material, that the defendant had no notice of such registration.

"19. I find that the colors red and blue for letters on the wafer rolls, the transparent paper for wrapping such rolls, and the words 'Wafers' have been used for many years by manufacturers of candy other than the plaintiff and defendant. There was no evidence showing definitely just how long or to what extent any other manufacturer had used these features. I find that in at least three cases, namely: Nawaco Wafers (Exhibit 11), Skylark Wafers (Exhibit 16), and Rex Wafers (Exhibit 13) the wrappers had words with blue letters with words or symbols in red between the words in blue, thus giving a general appearance similar to the label of the plaintiff although not so closely similar as is the label of the defendant. There was no evidence showing large sales of wafers by the manufacturers other than plaintiff and defendant.

"20. I find that neither plaintiff nor defendant has exclusive right to the use of blue or red letters or symbols upon a white background on a wrapper for wafer rolls or to the use of the word 'Wafers' on such rolls.

"21. I find that when the labels are placed unrolled flat against a buff wall a person of normal vision can distinguish the words 'Boston Wafers' on the label of the defendant from the words 'Necco Wafers' on the label of the plaintiff at a distance of ninety-eight (98) feet and can distinguish the smallest detail of the letters in the words 'Boston Wafers' and 'Necco Wafers' at a distance of thirty-seven (37) feet.

"22. I find that persons of normal vision using such care and observation as the public generally are expected to use in such matters would not be likely to mistake the label of the defendant for that of the plaintiff.

"23. I find, however, that the general appearance of the roll of the defendant is so similar to the general appearance of the roll of the plaintiff that a careless person or a young child might mistake the label of the defendant for that of the plaintiff."

The plaintiff waives in its brief all exceptions except those numbered 8, 12, 13, and 15, and its appeal from the

denial of the court to recommit the report, except so far as concerns the aforesaid exceptions. We consider the exceptions 8, 12, 13, and 15 in the order they are argued by the plaintiff.

Exception 15 is based on the plaintiff's request that the master should find "the defendant intended that its label should resemble the label of the plaintiff to a degree that it should be taken by the purchasing public, or some part thereof, as the product of the plaintiff." The plaintiff's request for the finding of fact above quoted, which was refused by the master, was sought by it as a necessary conclusion of fact from the master's findings that "At this time [1922] the defendant thought that the plaintiff's wafer roll was the largest selling roll on the market," and as a consequence "A designer was consulted, shown the label of the plaintiff and asked to design something better"; that "Various designs were offered by the designer and discussed by the defendant's president, two employees and the designer," and that "Finally the label complained of was adopted." The answer to this contention is that the master found on consideration of all the facts reported and of the unreported evidence of witnesses that "There was no evidence presented showing that the defendant had passed off its wafers as and for the wafers of the plaintiff [outside of certain testimony which was excluded and which by reason of the waiver of the plaintiff is not before this court] . . . nor was there any evidence that any one desiring to buy the wafers of the plaintiff as distinguished from any other wafers had been deceived into accepting the wafers of the defendant as and for the wafers of the plaintiff. . . . the sales of the wafers of the plaintiff have increased since 1922 when the label complained of was adopted by the defendant." This finding, in connection with all the other facts of the report, warranted the refusal of the master to find the defendant intended the label "should resemble the label of the plaintiff to a degree that it should be taken by the purchasing public, or some part thereof, as the product of the plaintiff." In any view we cannot say the refusal was clearly wrong involving as it does a finding of fact upon reported and unreported testimony. This exception is overruled.

The eighth exception is based upon objection to the report in that the master in paragraph "22" has employed the words, "using such care and observation as the public generally are expected to use in such matters," for the reason that the statement is one of law and not of fact, and for the further reason that the master "refused to find, though requested by the plaintiff to so find, what kind of care and observation the public use in the purchase of products such as the plaintiff's and defendant's candy wafers." It is evident that a mixed question of law and fact is presented by the statement of the master above quoted when applied to the findings which preceded it. Viewed in the light of all the findings, we perceive no error in it. *Gunnison* v. *Langley*, 3 Allen, 337. *Bradley* v. *Borden*, 223 Mass. 575. *Lindsay* v. *Swift*, 230 Mass. 407, 412. The master found in effect, that an ordinary, prudent man, endowed with normal vision, in the circumstances here presented would not be deceived. The finding was adequate. *Wallingford* v. *International Manuf. Co.* 244 Mass. 477. This exception is overruled. An inspection of the labels does not satisfy us that they are deceptively similar to the plaintiff's within the rule that to justify the interference of a court of equity the similarity in the labels must be such as to deceive or mislead the ordinary purchaser so that such purchaser would be unable at once to discriminate between the wafers sold by the plaintiff and those sold by the defendant. *Hub Dress Manuf. Co.* v. *Rottenberg*, 237 Mass. 281. *Wallingford* v. *International Manuf. Co.* 244 Mass. 477, 480.

Exception 13, that the master refused to find that the "public would be confused into believing that the defendant's product is the plaintiff's if both are sold in the trade," could not consistently stand with other findings of the master, and must be overruled. *Fay* v. *Corbett*, 233 Mass. 403, 407. The test is the effect on persons of average intelligence and on persons of ordinary prudence and caution among those who purchase the class of goods in question, and the judge was right in disregarding the effect on such persons as "children, foreigners, and illiterates," who are not endowed with intelligence, vision, prudence and caution. *Dunlop Pneu-*

*matic Tyre Co. Ltd.* v. *Dunlop Motor Co.* [1907] A. C. 430. *Motor Manufactures & Traders, Ltd.* v. *Motor Manufacturers' & Traders' Mutual Ins. Co. Ltd.* [1925] W. N. 69.

A careful examination of all the contentions of the plaintiff discloses no reversible error. It results that in the opinion of a majority of the court the interlocutory and final decrees are affirmed, with costs.

*Decree accordingly.*