NEW METHOD DIE & CUT-OUT COMPANY, INC. *vs.* MILTON
BRADLEY COMPANY & another.

Middlesex.    November 21, 1932. — January 29, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Unlawful Interference. Trade Secret. Agency,* Agent's duty of fidelity.
*Contract,* Of employment. *Unfair Competition. Equity Pleading and
Practice,* Master: report, recommittal.

In a suit in equity by a corporation against a former employee of the
plaintiff and another corporation, his subsequent employer, to estab-
lish the plaintiff's right, as to a trade secret, to a process of manufactur-
ing toys from cardboard, to enjoin the individual defendant from
further disclosure of such trade secret, and to compel the return to the
plaintiff of data relating thereto, it appeared that, when the individual
defendant left the plaintiff's employ, he took with him no material
manufacturing data; that there had been no express contract between
him and the plaintiff that he would maintain secrecy in regard to the
process or that inventions or improvements respecting processes, tools,
formulas, machinery or apparatus, which he might make or assist in
making, should belong to the plaintiff; that, while the individual de-
fendant took part to a substantial extent in developing the process,
he was not employed specially for that purpose; and that many of
the elements of the process were not new and were known to him
before his employment by the plaintiff. The plaintiff did not contend
that it was entitled to relief against the defendant corporation by
reason of its use of the process if the disclosure thereof to it by the
individual defendant was not wrongful. The bill was dismissed.
*Held,* that
    (1) No duty on the part of the individual defendant to maintain
secrecy with respect to the process could be implied, in the absence
of other facts creating such a duty, from knowledge on his part while
employed by the plaintiff that its officers wished the process to be
kept secret or from the fact that "he agreed that secrecy was desirable
for the welfare of the" plaintiff "and in fact urged . . . that secrecy
be maintained";
    (2) The mere fact that the plaintiff's officers worked in conjunction
with the individual defendant in the development of the process,
through combining elements not in themselves trade secrets of the
plaintiff, and contributed to such development to some extent, did
not entitle the plaintiff to the exclusive use of the process as against
the individual defendant;
    (3) The disclosure of the process by the individual defendant to
the defendant corporation was not wrongful and the bill properly was
dismissed.

In a suit in equity to enjoin alleged unfair competition in the sale of toys by the defendant, the bill properly was dismissed where it did not appear that the defendant ever represented that the toys sold by him were made by the plaintiff or that the defendant intended to deceive his customers or the public into thinking so, and it did appear that, although there were certain similarities between the toys sold by the defendant and those sold by the plaintiff, the defendant's customers, who were dealers, and the public would not be so deceived in view of the manner in which the toys were packed, marked and sold.

BILL IN EQUITY, filed in the Superior Court on May 8, 1930, and described in the opinion.

The suit was referred to a master. Material facts found by him are described in the opinion. By order of *Gray, J.*, there were entered an interlocutory decree overruling exceptions by the plaintiff to the master's report and confirming it, and a final decree dismissing the bill. The plaintiff appealed from both decrees.

*J. B. Abrams*, (*M. Palais* with him,) for the plaintiff.

*R. W. Crowell*, (*D. M. Macaulay* with him,) for the defendants.

FIELD, J.    The plaintiff and the defendant Milton Bradley Company are corporations engaged in manufacturing toys from cardboard. The defendant Church was employed by the plaintiff prior to April 27, 1929, and some time thereafter entered the employment of the defendant corporation.

This suit in equity was brought to establish the plaintiff's right, as to a trade secret, to a process of manufacturing toys from cardboard, to enjoin the defendant Church from further disclosure of this trade secret, to compel the return to the plaintiff of data relating thereto, to enjoin unfair competition in the sale of toys and for an accounting for damages and profits. The case was referred to a master who made a report. He was not required to report the evidence and did not do so. A "Stipulation as to Modification of Master's Report and Concerning Certain Evidence" was filed by the parties.

Thereafter a motion, as amended, to recommit the report was denied and an order was made for an interlocutory decree overruling the plaintiff's exceptions to the master's

report and confirming the report, and for a decree dismissing the bill. Decrees were entered as ordered and the plaintiff appealed from the order for decrees, the interlocutory decree overruling the plaintiff's exceptions and confirming the report, and the final decree dismissing the bill.

The basic contentions of the plaintiff are (a) that the plaintiff had a trade secret in a process of manufacturing toys from cardboard which the defendant Church wrongfully disclosed to the defendant corporation, (b) that the plaintiff is entitled to relief not only against the defendant Church but also against the defendant corporation, and (c) that the defendant corporation is competing unfairly with the plaintiff in the sale of toys. The plaintiff also makes the subsidiary contentions that it was error to overrule the plaintiff's exceptions to the master's report, and to deny the plaintiff's motion, as amended, to recommit that report.

Findings of the master include the following: The toys made by the plaintiff and the defendant corporation "are animal and cart designs, made of five or six layers of light cardboard, of a grade called newsboard or chipboard, laminated together with glue to a thickness of about one quarter of an inch. They are dipped in a coating substance and decorated in bright colors." In "general appearance to a casual observer the whole line of toys made by . . . [the defendant corporation] taken together, is similar to the line made by the . . . [plaintiff]." The plaintiff and the defendant corporation use "very much the same process" of manufacture, though some of the machines used are different.

The defendant Church was employed by the plaintiff from some time in 1924 until April 27, 1929, when he was discharged. During this time the plaintiff "developed its process" of manufacturing toys "by continual experiment, trial and improvement" and "the officers of [the] plaintiff and the defendant Church have worked hard to develop the process." The defendant Church first called on the defendant corporation about May 9, 1929. On May 16, 1929, he was asked by the defendant corporation to sub-

mit trial designs and was advanced money for services pending decision on his employment, and on June 16, 1929, he was employed to design a line of toys. "His duties included giving any information which might be helpful in the manufacture of the toys." The defendant corporation "at once set to work on a line of paper toys, which they put out to the trade for the first time on January 6, 1930."

The defendant "Church has described in detail most of this process" of manufacturing toys used by the plaintiff to the defendant corporation, and the defendant corporation "now uses substantially the same process." The defendant corporation, "although familiar with the elements of the process, never considered combining them in the manner and order . . . [in which they are combined] for the purpose of making toys of the construction and thickness of the toys referred to in this case, until Church persuaded them to make toys of his designing." The defendant corporation "had undoubtedly been aided in economy of design and in avoiding expensive experiments by Church's experience with . . . [the plaintiff]."

The defendant Church, when he left the employment of the plaintiff, "took no documentary manufacturing data, cost figures, or customers' lists" and no drawings which were a part of the plaintiff's files or were "final drawings which had been used by the . . . [plaintiff] for the manufacture of toys." He kept certain "preliminary sketches of . . . [his] ideas made as he developed them," which were at his home but which, if they were the property of the plaintiff, were "entirely inconsequential."

1. The plaintiff had no trade secret in a process of manufacturing toys from cardboard which the defendant Church wrongfully disclosed to the defendant corporation.

The question on this branch of the case is whether the knowledge possessed by the defendant Church of the process of manufacturing toys used by the plaintiff, considered in its entirety, was information secured by him solely through his employment by the plaintiff, which, though he did not take away any documents or drawings

of consequence relating to the process (see *Di Angeles* v. *Scauzillo*, 287 Mass. 291), he could not rightfully disclose to a later employer or use for its benefit. See *Aronson* v. *Orlov*, 228 Mass. 1.

There was no express contract that the defendant Church would maintain secrecy in regard to the process. Compare *Peabody* v. *Norfolk*, 98 Mass. 452. The master found that this defendant "did not agree that he would maintain secrecy if his employment should cease," and that neither he nor the plaintiff "made continued secrecy a condition of his employment." And no duty on the part of this defendant to maintain secrecy can be implied, in the absence of other facts creating such a duty, from his knowledge that the plaintiff's officers wished the process to be kept secret or from the fact, as found by the master, "that he agreed that secrecy was desirable for the welfare of the company on which his earnings depended, and in fact urged while he was employed by the . . . [plaintiff] that secrecy be maintained." Furthermore, this defendant "made no agreement whereby any inventions or improvements in the processes, tools, formulas, machinery or apparatus used for the manufacture of the plaintiff's products, or otherwise relating in any manner to the plaintiff's business, which . . . [he] might make or assist in making while in the employ of plaintiff, should belong to and be the property of the plaintiff." See *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158, 162.

The process, considered in its entirety, had not been developed when the defendant Church entered the employment of the plaintiff. He did not learn about it from the plaintiff or solely by reason of his employment, apart from his own knowledge gained through previous experience and the use, in the course of his employment, of his faculties, skill and experience in developing the process. Cases like *Essex Trust Co.* v. *Enwright*, 214 Mass. 507, and *Aronson* v. *Orlov*, 228 Mass. 1, differ in this respect from the present case. The master found that "Many elements of the process were well known factory operations before the toys were thought of by any one. Much of the process was

familiar to Church from his experience previous to . . .
[his employment by the plaintiff]. . . . Practically all of
the designs and several of the more novel features of the
process were brought to the . . . [plaintiff] by Church or
were worked out by him in conjunction with the . . .
[officers of the plaintiff]." From these and other findings
it appears that the defendant Church took part to a sub-
stantial extent in developing the process. But he was not
employed specifically for this purpose. The master found
that this defendant "was at first employed as a designer,
but as time went on he gave suggestions about improving
the processes and cutting costs of production, and his sug-
gestions were in some cases used and in others were not"—
a finding which is not overcome by the evidence set forth
in the stipulation. The case in this respect is distinguish-
able from *Wireless Specialty Apparatus Co.* v. *Mica Con-
denser Co. Ltd.* 239 Mass. 158, and *Hoyt* v. *Corporon,* 268
Mass. 544, relied on by the plaintiff.

The substance of the plaintiff's contention is that the
essential feature of its alleged trade secret is a novel com-
bination of the elements of the process of manufacturing
toys from cardboard in the process considered in its en-
tirety. The plaintiff, however, does not suggest that it
has a trade secret in any of the elements of the process
unless in the ingredients of the paint used or in production
costs. But it does not appear that the plaintiff's paint
formula is an essential element in the process or that it has
been disclosed or used by the defendant Church. Nor does
it appear that the plaintiff's production costs have been so
disclosed or used unless it may be implied that they incited
the defendant Church to the use of the process — an in-
sufficient ground for denying to him benefits of the process
to which otherwise he would be entitled. See *American
Stay Co.* v. *Delaney,* 211 Mass. 229, 232. On the findings
of the master, if this defendant, unaided, had developed the
process in the course of his employment by the plaintiff,
he could have carried away and used in his own business,
or in that of a later employer, his knowledge of the process,
which would have been the product of his knowledge ac-

quired previous to such employment, and of the use of his faculties, skill and experience in the ordinary course of that employment, under no express or implied agreement that he would maintain secrecy in regard to this process after he left such employment or that the process should be the property of the plaintiff. *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182. *Manton-Gaulin Manuf. Co. Inc.* v. *Colony*, 255 Mass. 194. See also *American Stay Co.* v. *Delaney*, 211 Mass. 229, 233; *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158, 162. Compare *Padover* v. *Axelson*, 268 Mass. 148, 151. That in the development of the process, through combining elements not in themselves trade secrets of the plaintiff, the plaintiff's officers worked in conjunction with this defendant and contributed to such development to an extent not fully shown by the master's findings does not entitle the plaintiff to the exclusive use of the process as against this defendant.

2. The plaintiff does not contend that it is entitled to relief against the defendant corporation by reason of its use of the process of manufacturing toys from cardboard if, as we decide, the disclosure of such process to it by the defendant Church was not wrongful.

3. The defendant corporation, on the facts found by the master, is not competing unfairly with the plaintiff in the manufacture and sale of toys made from cardboard.

The question on this branch of the case is whether the defendant corporation is competing with the plaintiff "for public patronage by adopting intentionally means adapted to deceive the public into thinking that it is trading with the latter when in fact dealing with the former, and thus palming off his goods as those of another." *Summerfield Co. of Boston* v. *Prime Furniture Co.* 242 Mass. 149, 155. The defendant corporation is not precluded from manufacturing and selling goods similar to those manufactured and sold by the plaintiff even if the desire for such goods was created by the plaintiff. But it has not the right to steal "the good will attaching to the plaintiff's personality, the benefit of the public's desire to have goods made by the plaintiff." *Flagg Manuf. Co.* v. *Holway*, 178 Mass. 83, 91.

Undoubtedly the defendant corporation is competing intentionally with the plaintiff, which was earlier in the field, in the sale of toys made from cardboard. The master found that the plaintiff "has built up a large and increasing trade in these toys from 1923 to date," and that the defendant corporation "intended and still intends to compete with the . . . [plaintiff] and to design articles of similar sizes at similar prices made of the same materials in a similar way."

There is no finding that the defendant corporation ever represented that the toys sold by it were made by the plaintiff or that it intended to deceive its customers or the public into so thinking. If there is any actual or probable deception of the public by the defendant corporation it is the result of similarities between its product or the packages in which such product is marketed and the product or packages of the plaintiff.

The findings of the master, however, dispose of any contention that the packages in which the defendant corporation's product is marketed are calculated to deceive. The toys made by the plaintiff and those made by the defendant corporation are packed in individual cardboard boxes. These boxes are described in detail in the master's report. His conclusion on all the evidence — which the subsidiary findings do not show to be wrong — is that a "purchaser or merchant seeing the two lines packed in their regular shipping boxes could not possibly confuse them." *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154, *Forster Manuf. Co.* v. *Cutter-Tower Co.* 211 Mass. 219, and *Grocers Supply Co.* v. *Dupuis,* 219 Mass. 576, therefore, are readily distinguishable. This finding and the further findings that the "toys are ordinarily sold to dealers in their boxes" and that if "the purchaser is a dealer, jobber, mail order house or syndicate . . . such purchaser, if he has ordinary vision and exercises ordinary care, will not be confused by the two lines" also dispose of any question of deception of such purchasers. See *Wallingford* v. *International Manuf. Co.*

244 Mass. 477, 480; *New England Confectionery Co.* v. *C. A. Briggs Co.* 256 Mass. 456, 465.

Both the plaintiff and the defendant corporation "sell principally to jobbers, mail order houses, syndicates such as five and ten cent stores, and dealers. Neither sells at retail." But though the defendant corporation sells only to dealers and there is and can be no deception of them, there may be wrongful conduct where there is likely to be deception of "the ultimate consumer when the goods are distributed for use in the ordinary course of trade." *Forster Manuf. Co.* v. *Cutter-Tower Co.* 211 Mass. 219, 222. See also *George G. Fox Co.* v. *Hathaway*, 199 Mass. 99, 103. The master, however, states that there is no evidence from which he can find that the general public buys "these toys by the trade name or the name of the manufacturer." He finds that the "toys are ordinarily sold to dealers in their boxes," and that if "the purchaser is an individual buying a toy at retail and desires to buy a particular toy known to him . . . he will not ordinarily be confused, but if the marking happens to be obliterated or hidden and the toy out of the box, he might be confused between a few of the items bearing closest resemblance," but if "the purchaser knows nothing of either trade name, and has no particular toy in mind, but simply wants a toy made of paper of the construction used in these toys, he would buy the toy of either manufacturer as willingly as the toy of the other."

The findings of the master show that this limited degree of possible confusion is due to the fundamental nature of the product and not to nonessential resemblances in color, form or markings intended or calculated to mislead purchasers to the belief that the toys manufactured and sold by the defendant corporation were made by the plaintiff. Compare *Reading Stove Works, Orr, Painter & Co.* v. *S. M. Howes Co.* 201 Mass. 437; *Forster Manuf. Co.* v. *Cutter-Tower Co.* 211 Mass. 219. The "toys are for very young children, and are necessarily for the most part common animal shapes" and the "colors used on the toys are neces-

sarily bright colors to make the toys attractive to small children." The defendant corporation in its "entire line has produced no colors of exactly the same shades and tints as occur in the . . . [plaintiff's] line" and although "the subjects are similar, no two items in the competing lines are exactly the same in outline. For many of the toys there is no item in the competing line which at all corresponds." The defendant corporation does not put its name on its toys, but it puts on them "a distinctive mark," though "in a very inconspicuous place," and it "is possible the spot carrying the mark may fall off the press and some toys may be turned out without it." The defendant corporation's mark "Bumpa Toys" is not in itself calculated to confuse a purchaser with the plaintiff's mark "Trixie Toys Boston" on all except the plaintiff's cheapest toys, some of which are unmarked. In this respect the case differs from *Grocers Supply Co.* v. *Dupuis,* 219 Mass. 576. See also *New England Confectionery Co.* v. *C. A. Briggs Co.* 256 Mass. 456. The facts do not show that the similarities between the toys manufactured and sold by the defendant corporation (even in the absence of more obvious marking) and those manufactured and sold by the plaintiff are likely to mislead the public to the belief that in buying the toys sold by the defendant corporation it is buying toys made by the plaintiff. It does not appear that the nature and appearance of the products of the defendant corporation mean to the public that they are made by the plaintiff. See *George G. Fox Co.* v. *Best Baking Co.* 209 Mass. 251, 257.

4. There was no error in overruling the plaintiff's exceptions to the master's report or in denying the motion, as amended, to recommit this report.

The plaintiff's exceptions are based on the failure of the master to make certain findings of fact, and on alleged vagueness, ambiguity, indefiniteness and inconsistencies in the findings. We find no error in the overruling of the exceptions. In the plaintiff's motion, as amended, to recommit the report it sought to have the master ordered to report certain evidence, make additional findings, explain findings and expunge findings. Nothing in the record

takes the case out of the ordinary rule that recommittal of a master's report is discretionary with the trial judge. *Epstein* v. *Epstein*, 287 Mass. 248, 254.

It follows that the interlocutory decree overruling the plaintiff's exceptions to the master's report and confirming the report must be affirmed, and that the final decree dismissing the bill must be affirmed with costs.

*Ordered accordingly.*