LOUIS A. BARETT vs. EARL GOODWIN.

Essex.    May 12, 1941. — June 30, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Trade Mark.    Unfair Competition.    Unlawful Interference.*

A suit in equity could not be maintained to enjoin the defendant from manufacturing and selling buckles which were a close copy of buckles manufactured by the plaintiff, unpatented and bearing no trade name nor trade mark, where the defendant's customers were a limited number of manufacturers or jobbers to whom he did not attempt to pass off his buckles as the plaintiff's and who were under no misapprehension as to their origin and the buyers from the defendant's customers and the ultimate consumers were not concerned with the origin of his buckles.

BILL IN EQUITY, filed in the Superior Court on January 30, 1939.

The plaintiff appealed from a final decree entered by order of *Brogna, J.*

*I. Bloch,* for the plaintiff.

*E. H. Borofski,* for the defendant.

LUMMUS, J.   This is a bill to restrain the infringement of an alleged trade mark.   The facts appear in the report of a master, which was confirmed.   There is no appeal from the interlocutory decree confirming the report, but the plaintiff appealed from a final decree dismissing the bill.

The plaintiff, who began business in 1928, is engaged in manufacturing and selling shoe buckles and clothing buckles in Lynn.   He began to make clothing buckles in 1933.   In March, 1937, he began to make clothing buckles with the following features: (a) design; (b) pivot hinge, the function of which is to allow the buckle to close up and down on a pivot; (c) a wide space to put straps through; (d) a double curvature of the face of the buckle; (e) staple holes; and (f) a catch.   These features were not originated by the plaintiff, but have been in common use for many years. The plaintiff also inserted one or two slots in the catch of

his buckles, to take the place of the teeth or grooves that had been previously used. This device was new.

On the face of his buckles the plaintiff engraved and impressed a design consisting of a plain rectangular center with parallel lines longitudinally across it and a plain border. This design is not a trade mark but only an ornamentation. A similar design had been used on many articles before the plaintiff used it. But no other buckles for shoes and clothing were similar in design and appearance to those of the plaintiff. The appearance of the plaintiff's buckles became familiar to his customers, who recognized them as his. But other dealers did not recognize them as his product.

The plaintiff had no patent on his buckles, although he applied for one in the summer of 1938. Up to the time of the trial no patent had been granted. The patent applied for did not cover the design. He had neither trade name nor trade mark. The word "Superior," used by the plaintiff in the name of his business, did not acquire a secondary meaning as a designation of his buckles. The defendant did not use that word at all, and the plaintiff did not stamp it upon his buckles.

The defendant has been manufacturing buckles since 1933. In May, 1938, he began to imitate the plaintiff's clothing buckles and to sell them to the clothing trade. He did not represent his buckles to be those of the plaintiff. His packages were unlike those of the plaintiff. The names under which they were sold were different. It was the custom of the trade for buckle manufacturers to copy the buckles of others if they were not patented. Both the plaintiff and the defendant copied the buckles of other manufacturers. The defendant's clothing buckles could not be distinguished from those of the plaintiff without careful examination, but no one was actually confused or deceived. There was no intention to defraud the public, nor was it defrauded. Both parties sell to comparatively few customers, who are manufacturers or jobbers. The plaintiff has five customers and the defendant seventeen.

A competing manufacturer has the right to copy an unpatented article. *Flagg Manuf. Co.* v. *Holway*, 178 Mass.

83, 90, 91. *George G. Fox Co.* v. *Best Baking Co.* 209 Mass. 251, 257. *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277, 283. *Russo* v. *Thompson,* 294 Mass. 44, 49. *Straus* v. *Notaseme Hosiery Co.* 240 U. S. 179, 182. *Kellogg Co.* v. *National Biscuit Co.* 305 U. S. 111, 119, 120. *Wilcox & Gibbs Sewing-Machine Co.* v. *Gibbens Frame,* 17 Fed. 623. *Sinko* v. *Snow-Craggs Corp.* 105 Fed. (2d) 450. *J. C. Penney Co.* v. *H. D. Lee Mercantile Co.* 120 Fed. (2d) 949. *American Fork & Hoe Co.* v. *Stampit Corp.* 125 Fed. (2d) 472. *Zangerle & Peterson Co.* v. *Venice Furniture Novelty Manuf. Co.* 133 Fed. (2d) 266. What he may not do is to pass off his goods as those of another (*Hildreth* v. *D. S. McDonald Co.* 164 Mass. 16; *Summerfield Co. of Boston* v. *Prime Furniture Co.* 242 Mass. 149, 155; *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277, 283; *Russo* v. *Thompson,* 294 Mass. 44, 49; *Rushmore* v. *Badger Brass Manuf. Co.* 198 Fed. 379), or knowingly place an instrument of fraud in the hands of his customers, with which it may be anticipated they will deceive the public. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154. *George G. Fox Co.* v. *Glynn,* 191 Mass. 344, 352. *George G. Fox Co.* v. *Hathaway,* 199 Mass. 99. *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277, 285. In the present case, as in the case last cited, the defendant sells to manufacturers and jobbers who are under no misapprehension as to the source of the product. There is nothing to show that buyers from them, or the ultimate consumers, are concerned with the question who made the buckles. Neither does the appearance of the buckles indicate anything to the trade in general or to the general public as to their origin.

*Decree affirmed with* **costs.**