ANGELL ELEVATOR LOCK COMPANY, INC. *vs.* THOMAS MANNING & another.

Middlesex.   February 4, 1965. — March 2, 1965.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Unfair Competition.   Unlawful Interference.*

A manufacturer of an elevator guide rail lubricator was not entitled in the circumstances to maintain a suit in equity for damages and injunctive relief against defendants who had procured one of the plaintiff's lubricators and copied it and manufactured and sold a lubricator closely resembling that of the plaintiff except in minor particulars, where it appeared that neither lubricator was patented or bore trade marks or trade names and it did not appear that there was any "passing off" of the defendants' product as being the product of the plaintiff or confusion of the defendants' product with that of the plaintiff.

BILL IN EQUITY filed in the Superior Court on January 6, 1964.

The suit was heard by *Fairhurst, J.,* on a master's report.

*Sheldon Newman* for the defendants.

*Robert G. Ward* for the plaintiff.

CUTTER, J.   The plaintiff (Angell) seeks, among other things, to enjoin Thomas Manning and his son Robert from making and selling an unpatented elevator lubricator similar to that made by Angell.   Upon the basis of a confirmed master's report, the final decree (a) enjoined the Mannings "from manufacturing . . . or selling . . . products patterned from or similar in appearance to . . . [Angell's] lubricator," and (b) ordered them to pay to Angell $6,000 as damages plus interest and costs.   The facts are stated as found by the master.

Thomas Manning entered the employ of a sole proprietorship, a predecessor of Angell, about forty years prior to 1957 when he was "finally laid off."   He had been

"principal fabricator of" Angell's lubricators. He was "a trusted and loyal employee . . . familiar with . . . the names and addresses of . . . [Angell's] customers," and had "attended to practically all phases of . . . [Angell's] business . . . with the exception of . . . bookkeeping." In 1957, Angell's predecessor, then a partnership, began to pay Thomas a pension of $25 a month. With Angell's incorporation in 1960 the monthly pension checks, "without consultation with Thomas" but with his knowledge, were marked "[p]ension and [c]onsulting fee." Thomas was, however, "not an employee of the corporation at any time . . . [after he was laid off] but . . . was given money as . . . [Angell's] pensioner" until after February, 1962, when Thomas refused to accept further money from Angell because Thomas "and his son had copied . . . [Angell's] lubricator and were selling . . . [their] model in competition with" Angell and to its customers.

In October, 1960, Robert Manning, with Thomas's knowledge, sent a messenger to Angell's shop "to procure one of Angell's lubricators without disclosing to Angell" that it was to be delivered to Robert. Robert dismantled the lubricator and used the parts to make patterns and molds from which lubricator parts were made. These were later assembled into lubricators substantially like Angell's except for minor changes.[1] The Mannings "intended to make their model look and operate like the Angell model." Robert prepared advertising material bearing cuts and instructions similar to the material used by Angell in its advertising. Although the appearance "of both sheets was quite similar," Angell's name and address "appeared conspicuously on its flyers" while the name "Thomas Manning & Company" and its address "appeared conspicuously on" Robert Manning's flyers, which differed in shape, size, color of paper, typography, and wording from the Angell flyers.

Robert communicated with some of Angell's customers and offered to sell lubricators to them at about twenty per

---

[1] The Mannings used stampings instead of castings in one clamp and painted in color certain supporting members and spreaders which Angell painted black.

cent less than Angell's price. Angell thereafter noticed a sharp decline in its sales and, in 1962 and 1963, this decline was caused by the "marketing of Robert's units." Angell's loss of profit to the date of filing the bill was $6,000.

Neither Angell nor Robert Manning ever have held a patent upon their respective lubricators nor have they had any trade marks or trade names for them. Angell's name appeared on the underside of a supporting bracket on its lubricator. Robert's lubricator omitted this name. "Robert's finished lubricator was such a perfect copy of Angell's that it was nearly indistinguishable except for the different color of the painted castings and might well cause a person looking at it to believe that it had been manufactured by Angell." Elevator guide rail lubricators are made and sold by many companies.

1. The master's findings (a) establish that Thomas Manning was not in Angell's employ between 1957 and 1962; and (b) furnish no basis for any conclusion that the pension, or indeed any employment agreement, imposed any limitation upon Thomas's right to work for his son or to use his experience, knowledge, and general skills (see *Padover* v. *Axelson,* 268 Mass. 148, 151) in the manufacture and sale of lubricators. There is no finding that Thomas removed any confidential list of Angell's customers or disclosed any trade secrets. In the circumstances, "[r]emembered information . . . [is] not confidential." *American Window Cleaning Co.* v. *Cohen,* 343 Mass. 195, 199. Cf. *New England Overall Co. Inc.* v. *Woltmann,* 343 Mass. 69, 73, 75–78.

2. There is no indication in the master's report that the Mannings attempted to pass off their product as being that of Angell. The difference in the advertising of Angell and Robert Manning, the absence of Angell's name from Robert Manning's lubricators, and the color differences tend to negate any passing off, as does the finding that Robert "offered *in his own name* to sell . . . [Angell's] customers his lubricators at about 20% less than Angell's" (emphasis supplied). See *Barett* v. *Goodwin,* 314 Mass. 279, 281. See also *New England Tel. & Tel. Co.* v. *National Merchandis-*

*ing Corp.* 335 Mass. 658, 671.

3.  Our cases establish that the mere copying and sale of an unpatented product does not furnish to its original manufacturer any basis for injunctive relief or damages. *Flagg Mfg. Co.* v. *Holway,* 178 Mass. 83, 90–91.  *Barett* v. *Goodwin,* 314 Mass. 279, 280–281.  See also *Dover Stamping Co.* v. *Fellows,* 163 Mass. 191, 198–199.  Two recent cases in the Supreme Court of the United States have given new emphasis to this established principle.  *Sears, Roebuck & Co.* v. *Stiffel Co.* 376 U. S. 225, 231–233.  *Compco Corp.* v. *Day-Brite Lighting, Inc.* 376 U. S. 234, 238–239.

There must be more than mere copying of "details of form and appearance" to justify equitable relief.  See *Russo* v. *Thompson,* 294 Mass. 44, 49–50.  See also *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277, 283–286.  Our cases, however, have required a person copying an unpatented product to label his own product sufficiently to indicate its origin, where that is appropriate to prevent confusion of his product with that of the original manufacturer.  See the *Russo* case, 294 Mass. 44, 50.

As already stated the additional element of "passing off" by Robert Manning has not been found.  It would not seem likely that similarity in the packaging of this type of product would be of importance.  No findings suggest that there was similarity of packages or that actual confusion of the two lubricators has occurred.  Nevertheless, if confusion had been shown Robert Manning might have been required to affix some simple and inexpensive label or tag to his product.

There was no basis in the findings for the injunction contained in the final decree and no support for any award of damages.  There is no finding that injury has been caused by any confusion of the Mannings' product with that of Angell, as distinguished from the injurious effect of the Mannings' entirely lawful competition.

4.  The final decree is reversed.  A new final decree is to be entered dismissing the bill, with costs to the Mannings, who are also to have costs of this appeal.

*So ordered.*