**John L. McKERNAN, d/b/a JMcK Creations, Plaintiff,**

v.

**James BUREK, d/b/a Meds Maps, and Sandwich Ship Supply, Inc., Defendants.**

**No. CIV. A. 99–12240–MEL.**

United States District Court, D. Massachusetts.

Oct. 19, 2000.

---

Thomas A. Kahrl, Falmouth, MA, for John McKernan.

Peter G. Hermes, Heather M. Houle, Hermes, Netburn, O'Connor & Spearing, P.C., Boston, MA, for James Burek.

Peter G. Hermes, Hermes, Netburn, O'Connor & Spearing, Boston, MA, Harvey R. Peters, Peters & Moscardelli, Boston, MA, for Sandwich Ship Supply, Inc.

## MEMORANDUM AND ORDER

LASKER, District Judge.

McKernan, Burek and Sandwich Ship Supply sell popular novelty stickers which purport to be permits for an imaginary Cape Cod Canal Tunnel. McKernan alleges that Burek and Sandwich Ship Supply (the "defendants") copied his Tunnel Permit and sell it as their own. McKernan asserts that the defendants' actions violate: § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (counts one and two); M.G.L. ch. 93A, § 11 (counts three and four); Massachusetts common law regarding trademarks (counts five and six); and require injunctive relief (count seven). In response, Burek has filed a counterclaim asserting that McKernan's actions constitute unfair competition under M.G.L. ch. 93A, § 11. Based on his Lanham Act claim, McKernan has moved for a preliminary injunction and for summary judgment. The defendants have counter moved for summary judgment. McKernan's motion for a preliminary injunction is denied. McKernan's motion for summary judgment on Burek's counterclaims is granted. Burek and Sandwich Ship Supply's motions for summary judgment on McKernan's claims are granted.

I.

For those with even a passing knowledge of Cape Cod, it is no secret that the traffic to and from the Cape during its busiest season can make the journey an exasperating adventure. Veterans of the Cape learn to cope with this journey and try to avoid the most severe waves of traffic. Neophytes to the Cape often do not fare as well. On summer Friday evenings, they can be seen languishing in long lines of traffic. Sensing the newcomers' frustration, many Cape veterans have sought, in jest, to exacerbate the frustration by offering the uninitiated a false beacon of hope: the Cape Cod Canal Tunnel.

The Cape Cod Canal Tunnel is a joke that has snowballed into an urban legend of some permanence. Like most urban legends, there is an abundance of people who claim to have started the story and its origin is unclear. As evidence of the vintage of the Cape Cod Canal Tunnel legend, the defendants have submitted materials which date the story to the 1970s. Most significant is the affidavit of James Mullane, a year-round resident of the Cape and an employee at the Boston Globe, submitted by Burek in support his motion of summary judgment. Mullane describes how he developed a fake Cape Cod Canal Tunnel Permit, similar to the ones now sold by the parties, to distribute among friends and family as early as the late 1970s.

While McKernan is neither the originator of the Cape Cod Canal Tunnel legend nor the idea of creating a Tunnel Permit, his innovation appears to have been the idea of selling a fake Tunnel Permit as a novelty item. In 1994, McKernan started selling an earlier version of his Tunnel Permit. McKernan's Tunnel Permit was a commercial success.

In 1996, Donald Spring, the owner of Sandwich Ship Supply, contacted an artist about designing a Tunnel Permit for his

company. The artist then designed Sandwich's first Tunnel Permit in accordance with Spring's specifications. While not identical to McKernan's Tunnel Permit, Sandwich's first Tunnel Permit is markedly similar (but not indistinguishable) in its appearance.

In early 1999, McKernan and Burek, a distributor of Cape Cod novelty products, discussed going into business together selling the Tunnel Permits. These discussions did not result in an agreement. Instead, in June of 1999, Burek began to sell his own version of the Tunnel Permit. Burek's version of the Tunnel Permit was strikingly similar to the Tunnel Permit sold by McKernan in the Summer of 1999. McKernan and Burek allege that the similarities between their Tunnel Permits is no accident.

McKernan also contends that Sandwich Ship Supply copied the design of his sticker which has remained largely unchanged since 1994. Below are McKernan, Burek, and Sandwich Ship Supply's 1999 Tunnel Permits which are at issue here:

  

|                          |                        |                                            |
|--------------------------|------------------------|--------------------------------------------|
| McKernan's Tunnel Permit | Burek's Tunnel Permit  | Sandwich Ship Supply's Tunnel Permit       |

In support of his position, Burek points out that McKernan copied the picture of the car coming out of a tunnel, a new addition to the sticker, from Burek. Burek also notes differences between his Tunnel Permit and McKernan's: (1) Burek's Permit uses the number 18, instead of 17, in the center of the sticker; (2) the Permits use dissimilar colors;[1] (3) both stickers clearly identify their different sources.

Burek's counterclaim for unfair trade practices relies on additional facts. Burek alleges that in the Summer of 1999, McKernan attempted to obtain copyright protection for part of McKernan's Tunnel Permit by making a knowingly false statement to the United States Copyright Office, namely, that McKernan had drawn the map of Cape Cod which appears on his Tunnel Permit, when, in fact, McKernan had merely copied the drawing from a book. Burek claims that based on this "fraudulent application," McKernan then told Burek's customers that McKernan had, in fact, obtained copyright protection for the entire Tunnel Permit and that Burek's Tunnel Permit was infringing on this copyright. Burek asserts that he lost both business and good will as a result of these representations.

---

1. On McKernan's Tunnel Permit "CAPE COD CANAL," "PERMIT," the picture of a car coming out of the tunnel, the map of Cape Cod, and his statement identifying the source of the Permit are all black in color. On Burek's sticker these items are all blue in color. On both McKernan and Burek's Tunnel Permits the words "TUNNEL," "RESIDENT" and the number in the center of the sticker are all red in color. Burek's Tunnel Permit also has a blue border. The colors used on Sandwich Ship Supply's Tunnel Permit are also different. On Sandwich's Tunnel Permit "CAPE COD CANAL," "PERMIT," "1999-Y2K," the picture of the castle, the border and its statement identifying the source are all blue in color. Its picture of a car coming out of the tunnel, "TUNNEL," "RESIDENT," and the number 17 are all in red.

## II.

### *Defendant's did not Violate § 43(a) of the Lanham Act*

The Lanham Act provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion ... shall be liable in a civil action[.]

§ 43(a) of the Lanham Act (codified at 15 U.S.C. § 1125(a)).

Section 43(a) has been interpreted as protecting both packaging, or "trade dress," and product design. *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 207–208, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). However, while product design is protected under § 43(a), it is only protected upon a showing of "secondary meaning," that is, a showing that "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Wal–Mart* 529 U.S. at 210, 120 S.Ct. 1339 (citations omitted).

McKernan conceded at argument that his Tunnel Permit does not have "secondary meaning." Thus, he is entitled to protection from infringement only if he demonstrates first, that he is seeking to protect the "trade dress" of the Tunnel Permit and not its "product design" *Wal–Mart*, 529 U.S. at 212, 120 S.Ct. 1339, and second, that the Tunnel Permit is "inherently distinctive." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 40 (1st Cir.1998).

### *A) McKernan is Seeking Protection for a "Product Design" Which, by Definition, is not Protectable as "Inherently Distinctive"*

In *Wal–Mart*, the Court held that product design, unlike trade dress, could never be "inherently distinctive." In commenting on this difference the Court stated:

[T]his manner of distinguishing *Two Pesos*, [the most recent prior opinion on the subject] will force courts to draw difficult lines between product-design and product-packaging trade dress. There will indeed be some hard cases at the margin: a classic glass Coca–Cola bottle, for instance, may constitute packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors, or part of the product itself for those consumers who buy Coke in the classic glass bottle, rather than a can, because they think it more stylish to drink from the former. We believe, however, that the frequency and the difficulty of having to distinguish between product design and product packaging will be much less than the frequency and the difficulty of having to decide when a product design is inherently distinctive. To the extent there are close cases, we believe that courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning. The very closeness will suggest the existence of relatively small utility in adopting an inherent-distinctiveness principle, and relatively great consumer benefit in requiring a demonstration of secondary meaning.

*Wal–Mart*, 529 U.S. at 214–215, 120 S.Ct. 1339 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)).

The Tunnel Permit presents one of the "hard cases at the margin" referred to by the Supreme Court. It is particularly difficult to try to distinguish between the packaging and the product when discussing an ornamental bumper sticker. The packaging and the product are so intertwined that distinguishing between them may be regarded as a scholastic endeavor.

Nevertheless, the Supreme Court's opinion in *Wal–Mart* provides some guidance. The example given in *Wal–Mart*, of the classic Coca–Cola bottle is instructive: an item is the product if it is the essential commodity being purchased and consumed rather than the dress which presents the product.

Here, the essential commodity being purchased is a joke on a bumper sticker. All of the visual elements contained in the Tunnel Permit are a part of this joke and indispensable to it. What is being purchased and consumed is the novelty sticker, not dress identifying the prestige or standing of its source. Because McKernan is seeking protection for the product being consumed, the proper classification of what McKernan seeks to protect is product design. This view of the matter is strengthened by the *Wal–Mart* Court's remarkably clear advice that in close cases trial courts should "err on the side of caution and classify ambiguous trade dress as product design." *Wal–Mart*, 529 U.S. at 215, 120 S.Ct. 1339.

Accordingly, because McKernan seeks to protect his product design which, by definition, cannot be "inherently distinctive," his claim under § 43(a) fails.

*B) Even if McKernan was Seeking Protection for "Trade Dress," He has not Shown That Tunnel Permit is "Inherently Distinctive"*

In arguing that his Tunnel Permit is *trade dress* entitled to trademark protection, McKernan asserts that it is "inherently distinctive" and therefore presumably entitled to protection. (Citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976)).

McKernan's contention that his Tunnel Permit is "inherently distinctive" trade dress relies on a syllogism: first, that his Tunnel Permit is based on a fictional, nonexistent item (the Cape Cod Canal Tunnel), and second, that "the suggestion that a mark or product that connotes a fictional and nonexistent item or thing is de-

scriptive of an item [or generic] [the other two general categories for marks] belies common sense. It goes without saying that a descriptive term describes something that exists." From these postulates, McKernan concludes that items based on fictional, nonexistent things, like his Tunnel Permit, are "necessarily inherently distinctive."

McKernan's syllogism is unhelpful. It is neither common sense nor the law that items based on fictional and nonexistent things are "necessarily inherently distinctive" trade dress. Applying this analysis across the board would yield the absurd result that items based on Father Time, the Stork, Santa Claus and the Easter Bunny would all be "necessarily inherently distinctive" trade dress.

The correct test for determining whether trade dress is "inherently distinctive" is articulated in the First Circuit's opinion in *Lund*. There, at 40, the Court explained that trade dress is "inherently distinctive" if "the design, shape or combination of elements is so unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin—a trademark."

Even assuming that McKernan's claim can be characterized as a trade dress claim and not one for product design, the Tunnel Permit is not protectible under § 43(a) because it does not meet the *Lund* standard. The Tunnel Permit adopts a typical design for a motor vehicle permit based on an old joke. Next, it adds a picture of a car coming out of a tunnel (which the plaintiff admits he received from the defendant) in the right hand corner. Finally, there is a simple map of Cape Cod (which the plaintiff admits he copied from a book) in the left hand corner. This Tunnel Permit is not a combination of unexpected visual elements that will automatically be perceived by customers as an indicator of origin. Instead, it is a combination of ordinary visual elements that indicates to

consumers the humor of an old Cape Cod saw.

## III.

### Defendants are Entitled to Summary Judgment on McKernan's Common Law Trademark Claim

■ McKernan next contends that he owns a trademark under Massachusetts common law. In response, the defendants assert that McKernan's failure to establish a federal right to a trademark precludes a finding of a trademark under Massachusetts law.

It is unnecessary to decide whether Massachusetts trademark law is coextensive with federal law, because it is clear that, in any event, under Massachusetts trademark law, McKernan is not entitled to protection. In *Angell Elevator Lock Co. v. Manning*, 348 Mass. 623, 205 N.E.2d 245 (1965), the plaintiff brought suit against a former employee who had copied and sold his elevator lock with a few cosmetic alterations. One of the alterations made by the defendant was that on the lock he clearly identified himself as the producer. In denying the plaintiff's claim the Supreme Judicial Court ("SJC") held:

> Our cases establish that the mere copying and sale of an unpatented product does not furnish to its original manufacturer any basis for injunctive relief or damages. There must be more than mere copying of details of form and appearance to justify equitable relief. Our cases, however, have required a person copying an unpatented product to label his own product sufficiently to indicate its origin, where that is appropriate to prevent confusion of his product with that of the original manufacturer.

*Angell*, 205 N.E.2d at 248 (citations omitted).

The SJC's reasoning in *Angell* applies. Like the defendant in *Angell*, the defendants here have clearly identified the source of their Tunnel Permits. Their mere copying of McKernan's Tunnel Permit, even if established, does not justify relief.

## IV.

### Defendant's did not Violate M.G.L. ch. 93A, § 11

■ McKernan asserts a claim under M.G.L. ch. 93A, § 11 based on his contention that the defendants copied his Tunnel Permit. Because McKernan's claims under state and federal trademark law fail, this related claim under M.G.L. ch. 93A, § 11 is also deficient. *See Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48 (D.Mass.1993) (holding that a parody of a protected mark which did not create source confusion and therefore, did not breach federal trademark law, did not violate M.G.L. ch. 93A).

McKernan also alleges that Burek violated M.G.L. ch. 93A, § 11 in 1999, when he and Burek discussed going into business together selling the Tunnel Permits. While McKernan alleges that Burek engaged him in business negotiations in order to "misappropriate the plaintiff's property and gain valuable information," McKernan has failed to provide any evidence to support this allegation.

## V.

### McKernan is Entitled to Summary Judgment on Burek's Counterclaims

Burek has filed a counterclaim which contends that McKernan's alleged misrepresentations constituted fraud and violated M.G.L. ch. 93A, § 11.

■ First, Burek asserts that McKernan misrepresented to Burek's customer that McKernan's Tunnel Permit was copyrighted. Burek provides no admissible evidence to sustain this claim. Burek relies solely on his affidavit submitted in support of his motion and the only evidence contained in the affidavit is Burek's recollec-

tion of what some of his customers had told him about conversations they had with McKernan. This material is hearsay, inadmissible under Fed.R.Civ.P. 56(e).

Second, Burek alleges that McKernan misrepresented to the "general public and this Court ... that he was the originator and creator of the sticker's concept, design and artwork." Burek has failed to establish that, in making these statements, McKernan made any intentional misrepresentations of fact or engaged in anything more than puffery. Such puffery, which is not uncommon in litigation, does not rise to the level of "rascality" required to state an actionable claim under M.G.L. ch. 93A, § 11. *See Maruho Co., Ltd. v. Miles, Inc.,* 13 F.3d 6, 10 (1st Cir.1993) ("rascal-like" behavior must be established to state a claim M.G.L. ch. 93A, § 11); *Levings v. Forbes & Wallace Inc.,* 8 Mass.App.Ct. 498, 396 N.E.2d 149, 153 (1979) (same); *Walsh v. Chestnut Hill Bank and Trust,* 414 Mass. 283, 607 N.E.2d 737, 740 (1993) (upholding trial judge's determination after a jury trial that bank's negligent misrepresentation did not rise to the level of an unfair and deceptive trade practice under M.G.L. ch. 93A, § 11).

Moreover, for false or misleading statements to be actionable under M.G.L. ch. 93A, § 11, they must cause a loss to the plaintiff. *Schwanbeck v. Federal-Mogul Corp.,* 31 Mass.App.Ct. 390, 578 N.E.2d 789, 804 (1991) (reversed on other grounds 412 Mass. 703, 592 N.E.2d 1289). Burek has not presented any evidence to support the conclusion that McKernan's "originator and creator" representations have adversely effected Burek's business.

## VI.

The complaint and counterclaim are dismissed. Accordingly, McKernan's request for injunctive relief is denied.

It is so ordered.